REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 0358 and 1258

September Term, 2014

No. 0358
INJURED WORKERS' INSURANCE FUND

v.

SUBSEQUENT INJURY FUND, ET AL.

--------------

No. 1258
BALTIMORE COUNTY, MARYLAND

v.

SUBSEQUENT INJURY FUND, ET AL.

Wright,
Berger,
Nazarian,

JJ.

Opinion by Wright, J.

Filed:  April 3, 2015

This consolidated appeal arises from decisions of the Workers' Compensation Commission ("Commission") in two separate cases concluding that, pursuant to Md. Code (1991, 2008 Repl. Vol.), Labor & Employment Article ("LE"), employers must compensate appellee, the Subsequent Injury Fund ("SIF"), a 6.5% assessment based on the Commission's entire award to the employee, not merely the amount payable after any offsets for retirement benefits. The employer in the first case, appellant, Maryland Transit Administration ("MTA"),[1] filed a petition for judicial review of the Commission's decision regarding MTA employee, Salvatore Glorioso's, claim in the Circuit Court for Baltimore City on December 26, 2013. Following a hearing on April 21, 2014, the Circuit Court for Baltimore City affirmed the Commission's decision. The employer in the second case, appellant, Baltimore County ("County"), filed a petition for judicial review of the Commission's decision regarding County firefighter, Gary Shipp's, claim in the Circuit Court for Baltimore County on December 18, 2013. Subsequently, the County and SIF filed cross-motions for summary judgment. Following a hearing on July 29, 2014, the Circuit Court for Baltimore County granted SIF's motion and denied the County's. Both MTA and the County timely appealed.[2]

We are asked to determine whether LE requires employers to pay the 6.5% assessment to SIF based on the full amount of all permanent disability awards regardless

---

[1] MTA is represented by counsel for its insurer, the Injured Workers' Insurance Fund ("IWIF"), because IWIF is responsible for paying the assessment to SIF.

[2] Neither Glorioso nor Shipp is a party to this consolidated appeal.

of any offset for retirement benefits.[3]  We answer this question in the affirmative and, accordingly, affirm the circuit courts' judgments.

**Facts**

SIF is a State agency created by the Maryland General Assembly to pay part of a workers' compensation claim when an injured employee has a preexisting medical or physical condition that exacerbates his or her work-related injury.  *See* LE § 9-802. When an employee who is injured on the job has this type of preexisting condition, the employer compensates the employee only for any disability directly attributable to the employment-related incident, and SIF compensates the employee for the additional extent of the disability attributable to the preexisting condition.  *Id.*; *Subsequent Injury Fund v. Kraus*, 301 Md. 111, 115 (1984).  In establishing SIF, the General Assembly sought to encourage employers to hire individuals with preexisting medical or physical conditions. *Subsequent Injury Fund v. Pack*, 250 Md. 306, 308 (1968) ("Its purpose was to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred").

---

[3] In its brief, MTA asked: "Should [SIF's] Assessment be calculated based on the amount of the award prior to or after the offset granted under [LE], § 9-610?" Meanwhile, the County asked:

> (1) Whether the Circuit Court erred, as a matter of law, in its rulings on the parties' respective motions for summary judgment.
>
> (2) Whether an employer/insurer, when entitled to a statutory offset of an award of permanent partial disability issued by the [] Commission, is obligated to pay an assessment to [SIF] based on the amount of the award before or after the offset is calculated.

2

SIF's sole revenue source is a statutory assessment that the Commission imposes on an employer or its insurer whenever the Commission makes an "award . . . for permanent disability or death" or approves a settlement. *See* LE § 9-806(a). The assessment is "6.5%, payable to [SIF], on: (i) each award against an employer or its insurer for permanent disability or death, including awards for disfigurement and mutilation;" or "(ii) . . . each amount payable by an employer or its insurer under a settlement agreement approved by the Commission[.]" *Id.*

## A.     The MTA Award

It is undisputed that in 2010, Glorioso suffered a work-related injury and subsequently filed a claim with the Commission. After hearing the matter on August 30, 2012, the Commission issued a decision on September 11, 2012, finding that Glorioso had a permanent partial disability "amounting to 30% industrial loss of use of the body as a result of an injury to the back." As a result, the Commission awarded $46,050.00, which it detailed as follows: "at the rate of $307.00, payable weekly, beginning May 3, 2012, for a period of 150 weeks." Because Glorioso also received disability retirement benefits from the MTA, however, the Commission added that pursuant to LE § 9-610,[4]

---

[4] The pertinent part of that statute states:

(c)(1) The Commission may:

(i) determine whether any benefit provided by the employer is equal to or greater than any benefit provided for in this title; and

(ii) make an award against the employer or the Subsequent Injury Fund or both to provide an additional benefit that equals the difference between the benefit provided by the employer and the benefits required by this title.

3

the compensation was "subject to an offset effective April 1, 2012 in the amount of $118.27," thus lowering the award to $28,309.50. In addition, the Commission noted that the award was "subject to a total assessment of . . . 6.5% . . . on the amount payable pursuant to [LE] § 9-806[.]"[5]

On August 9, 2013, SIF filed Issues with the Commission, asserting that that MTA and its insurer "refuse to pay the 6.5% assessment on the award dated 9/11/12." SIF requested a hearing and took "the position . . . that the assessment is due on the amount of the award regardless of any offset for retirement benefits," for a total of $2,993.25. Following a hearing on November 20, 2013, the Commission issued an order on December 17, 2013, directing MTA to "pay the assessment of 6.5% on the award of 30% loss of use of the body, as awarded [on] September 11, 2012[.]" The Commission reasoned that the General Assembly specifically used the term "amount payable" when imposing the assessment on settlement agreements but not when imposing it on awards for permanent disability or death.

## B. The County Award

It is undisputed that in 2002, Shipp became disabled as a result of hypertension and coronary artery disease and, thereafter, filed a claim with the Commission. After hearing the matter on February 9, 2012, the Commission issued a decision on March 5,

---

LE § 9-610(c)(1).

[5] In closing, the Commission "further ORDERED that from the final weeks of compensation the following fees shall be paid: Todd L. Schuler, Esquire in the amount of $4,954.16, (*after offset*)[.]" (Emphasis in original).

2012, finding that Shipp had a permanent partial disability "amounting to 50% industrial loss of use of the body." As a result, the Commission awarded $174,825.00, which it detailed as follows: "at the rate of $525.00, payable weekly, beginning May 14, 2012, for a period of 333 weeks[.]"

On March 7, 2012, upon realizing that the Commission did not account for the statutory offset resulting from Shipp's service retirement, the County filed a request for rehearing. Subsequently, the Commission issued a new order, adding the following paragraph:

> The Commission finds that the claimant is receiving a service retirement effective year 2002 in the amount of $31,488.54 per year or $605.55 per week. Pursuant to LE [§] 9-503(e),[6] the employer is entitled to offset as follows: Average Weekly Wage: $800.00 minus $605.55 = $194.45. Therefore, the claimant's permanent partial disability shall be paid at the weekly rate of $194.45.

---

[6] That section states:

(e)(1) Except as provided in paragraph (2) of this subsection, any paid firefighter . . . who is eligible for benefits under subsection (a), (b), (c), or (d) of this section or the dependents of those individuals shall receive the benefits in addition to any benefits that the individual or the dependents of the individual are entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the . . . firefighter . . . .

LE § 9-503(e). Because Shipp was a firefighter, the County's offset was based on LE § 9-503(e) instead of LE § 9-610. As SIF notes, "it does not appear that there is any functional difference between an offset for retirement benefits under LE § 9-503(e) and the more common offset under LE § 9-610."

This modification lowered the Commission's award to $64,751.85. In its order, the Commission also noted that the award was "subject to a total assessment of . . . 6.5% . . . on the amount payable pursuant to [LE] § 9-806[.]"

Thereafter, the County made payment to SIF in the amount of $4,208.87, or 6.5% of the award that resulted after subtracting the statutory offset. SIF requested a hearing, arguing that it was entitled to the balance of $11,363.63, which was 6.5% of the total award made by the Commission prior to accounting for the offset. Following a hearing on October 29, 2013, the Commission issued an order on December 12, 2013, directing the County to "pay the assessment of 6.5% on the award of 50% loss of use of the body, as awarded [on] March 29, 2012[.]" As in the MTA's and Glorioso's case, the Commission reasoned that the General Assembly specifically used the term "amount payable" when imposing the assessment on settlement agreements but not when imposing it on awards for permanent disability or death.

### Standard of Review

An appellate court reviews a grant of summary judgment by the Commission for "legal correctness." *Wal Mart Stores, Inc. v. Holmes*, 416 Md. 346, 358 (2010). Our role in reviewing an administrative agency adjudicatory decision is "narrow," however, and "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *W.M. Schlosser Co. v. Uninsured Employers' Fund*, 414 Md. 195, 204 (2010) (citation omitted).

6

Generally, "the decision of the Commission is presumed to be prima facie correct[.]" LE § 9-745(b)(1); *see also Cmty. Realty Co., Inc. v. Siskos*, 31 Md. App. 99, 105 (1976) (citations omitted); *Ackerhalt v. Hanline Bros., Inc.*, 253 Md. 13, 20 (1969) (citation omitted); *Krell v. Maryland Drydock Co.*, 184 Md. 428, 435 (1945). Although this presumption of correctness "does not extend to questions of law," we nonetheless "afford the Commission a degree of deference, as appropriate, in its formal interpretations of the Workers' Compensation Act." *Montgomery Cnty. v. Deibler*, 423 Md. 54, 60 (2011) (citations omitted); *see also W.M. Schlosser Co.*, 414 Md. at 205 ("an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts") (citations omitted); *Hart v. Subsequent Injury Fund*, 172 Md. App. 159, 166 (2006) ("we give due deference to the Commission's own interpretation of the statute it administers") (citation omitted).

## Discussion

Appellants argue that SIF's assessment should be calculated using the amount payable to the claimant after the offset is granted. According to MTA, when LE § 9-806 is read in its entirety, "[t]he most commonsensical and natural reading would be that the amount awarded is the amount actually [] paid," which then "forms the basis of the calculation for the SIF assessment." Meanwhile, the County argues that the Commission did not have jurisdiction to determine the calculation of the assessment and, furthermore, that the Commission's decision goes against "clear legislative intent." Based upon these contentions, appellants ask us to reverse the circuit court's judgment and remand with

7

instructions to send the case back to the Commission for the purpose of recalculating SIF's assessment using the amount payable to the claimant after the offset.

In response, SIF argues that the Commission had jurisdiction to determine the correct amount of the assessment, and that its decision was correct because "the plain language of [LE § 9-806(a)] requires that the Commission order a 6.5% assessment on the full amount of all awards for permanent disability or death." Alternatively, SIF asserts that, "even if the statute were ambiguous, this Court should defer to the Commission's reasonable interpretation."

At the outset, we address the County's assertion that the Commission did not have jurisdiction to determine the calculation of the assessment pursuant to LE § 9-806 because "the SIF assessment is clearly a tax" and "the Commission's jurisdiction does not extend beyond administrative imposition of the same." As SIF correctly notes, the County's argument is "based entirely on a Court of Appeals opinion that the General Assembly later abrogated by statute." *See Workmen's Comp. Comm'n v. Prop. & Cas. Ins. Guar. Corp.*, 319 Md. 1 (1990), *abrogated by* 1995 Md. Laws, ch. 293. Indeed, the Court in *Workmen's Comp. Comm'n* held that the assessment under LE § 9-806 was a "tax[]" for purposes of a statute exempting the Property and Casualty Guaranty Insurance Corporation from "all taxes levied by this State." *Id.* at 4, 6. In 1995, however, the General Assembly amended LE § 9-806 – specifically subsection (e) – to clarify that "[t]he assessment imposed under this section is for payment of claims submitted to the Subsequent Injury Fund and is *not a tax* intended to benefit the State." (Emphasis added). *See* 1995 Md. Laws, ch. 293 ("AN ACT concerning Subsequent Injury Fund –

8

Assessments Not a Tax FOR the purpose of providing that the assessment payable to the Subsequent Injury Fund is not a tax; and providing that the Property and Casualty Insurance Guaranty Corporation is subject to the assessment.").  As such, we agree with SIF that even if the rationale in *Workmen's Comp. Comm'n* could be extended to this context, it no longer has any force.

Having established that the Commission had jurisdiction over this matter, we turn to determine whether it was legally correct in reaching its conclusion.  The relevant statute in this case, LE § 9-806, states in pertinent part:

> (a)(1) The Commission shall impose an assessment of 6.5%, payable to the Subsequent Injury Fund, on:
>
> > (i) each award against an employer or its insurer for permanent disability or death, including awards for disfigurement and mutilation;
> >
> > (ii) except as provided in paragraph (2) of this subsection, each amount payable by an employer or its insurer under a settlement agreement approved by the Commission; and
> >
> > (iii) each amount payable under item (i) or (ii) of this paragraph by the Property and Casualty Guaranty Corporation on behalf of an insolvent insurer.

In interpreting this section, we begin by looking at the statutory language.  *Philip Electronics N. Am. v. Wright*, 348 Md. 209, 216-17 (1997), *superseded by statute on other grounds as stated in W.R. Grace & Co. v. Swedo*, 439 Md. 441 (2014).  If its plain meaning "is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end." *Id.* at 217 (citations omitted).  Only "when the meaning of the plain language is

ambiguous or unclear [do] we seek to discern the intent of the legislature from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Id.* (citation omitted).

LE § 9-806(a)(1)(i) directs the Commission to "impose an assessment of 6.5%, payable to [SIF], on . . . *each award* against an employer or its insurer *for permanent disability or death*[.]" (Emphasis added). When the Commission issues an award for permanent disability, as it did in these consolidated cases, it determines the percentage loss of the body that the employee has suffered. Although that percentage is then used to calculate the dollar amount due to the claimant, the "award" itself is based on the claimant's "permanent disability," which does not change simply because the employer is entitled to an offset for some other reason.

Stated differently, the Commission awards the claimant a particular sum of money based on the extent of his or her injury. The final amount payable directly by the insurer or employer under the award may be reduced because of an offset for retirement benefits, but the "award . . . for permanent disability" remains the same. Accordingly, regardless of whether there is an offset for retirement benefits, the claimant is still entitled to receive the full dollar amount of the award before the offset; however, a portion of the award is instead paid by the retirement system rather than directly by the employer. As SIF notes in its brief, "this in no way absolves the employer (or its insurer) from paying the assessment based on the full award."

Other provisions of the statute further show that the "award against an employer or its insurer for permanent disability or death" must include more than just the "amount

10

payable" for purposes of calculating SIF's assessment. As the Commission noted, in contrast to LE § 9-806(a)(1)(i), which imposes the assessment on "each award," LE § 9-806(a)(1)(ii) imposes the assessment on the "*amount payable* by an employer or its insurer under a settlement agreement approved by the Commission[.]" (Emphasis added). The General Assembly specifically chose not to use the same language when imposing the assessment on Commission awards. Had the General Assembly intended to limit SIF's assessment to the "amount payable" under the award, it could have specified as such.

Moreover, the Commission's interpretation is consistent with the purpose of the assessment statute, which is to provide the "primary sources of monies for [SIF]."[7] *Cooper v. Wicomico Cnty., Dep't of Pub. Works*, 284 Md. 576, 578 (1979). The assessment is "essential to [SIF's] solvency" and its mission to compensate employees with preexisting medical conditions after work-related accidents. *Id.* at 583. If we adopt the appellants' argument, SIF would lose revenue whenever the employer or insurer is entitled to an offset for retirement benefits.

---

[7] We emphasize that appellate courts "give due deference to the Commission's own interpretation of the statute it administers." *Hart*, 172 Md. App. at 166. And, even "greater weight [is] placed on those agency interpretations that are the product of adversarial proceedings" or where the agency "engaged in a process of reasoned elaboration in formulating its interpretation." *Stachowski v. Sysco Food Servs. of Balt., Inc.*, 402 Md. 506, 517 (2007) (citation omitted). Whereas here, the Commission in these two cases carefully considered the statutory language during an adversarial adjudicatory proceeding and issued formal, written opinions that detailed the reasons for reaching its conclusion, we would have deferred to the Commission's interpretation had we found the language of LE § 9-806 to be ambiguous.

Appellants argue that it would be unfair to impose SIF's assessment on the full amount of the award when they are not actually paying the full amount of the award themselves. The assessment, as interpreted by the Commission, however, does not place a double burden on the public employer when the amount is based on the total award because the employer or its insurer pays no more to SIF than it would have paid had the employee not received any offsetting disability retirement benefits. Thus, the Legislature's goal of preventing government employers from having to pay disability benefits to an employee twice for the same injury would still be satisfied. *See Tsottles v. Mayor & City Council of Baltimore*, 55 Md. App. 58, 59 (1983) ("the Maryland Workmen's Compensation Act . . . attempts to prevent double payment from the public treasury to civil servants for an injury arising out of the employment relationship") (citations omitted); *Nooe v. City of Baltimore*, 28 Md. App. 348, 352 (1975) ("the General Assembly was concerned with, and attempted to prohibit, governmental authorities being obliged to pay benefits to an employee twice as a result of the same injury").

Finally, the MTA cites two unrelated statutes, LE §§ 9-804(b)[8] & 9-656(b),[9] to

support its proposed interpretation.[10]  Those statutes, however, do not have any direct

---

[8] LE § 9-804(b) states:

*Deduction for prior award.* – (1) When the Commission makes an award against the Subsequent Injury Fund, if the prior permanent disability contributes to the covered employee's current permanent disability, the Commission shall deduct from the award the amount of all prior permanent disability payments received by the covered employee under:

(i)      each prior award for permanent disability made by the Commission or a similar unit in another state; or

(ii)     any prior final compromise and settlement agreement approved by the Commission or a similar unit in another state.

(2) In the case of a permanent total disability under Subtitle 6, Part V of this title, the deduction shall be made by reducing the weekly rate of compensation in accordance with § 9-729 of this title until the amount of the prior permanent disability payments awarded would have been paid if they had been paid in weekly payments.

[9] LE § 9-656(b) states:

*Payment of compensation.* – The covered employee:

(1) is entitled to compensation for the portion of the disability of the covered employee that is reasonably attributable solely to the accidental personal injury or occupational disease; and

(2) is not entitled to compensation for the portion of the disability that is reasonably attributable to the preexisting disease or infirmity.

[10] MTA also notes that, in Glorioso's case, the amount paid to the attorney was calculated using the amount after the offset.  According to MTA, it follows that "the Employer and Insurer should not have to pay the SIF Assessment" based on the amount prior to the offset.  This argument is flawed.  Had the Commission intended for the employer to calculate SIF's assessment after the offset, it would have so specified as it did when it "further ORDERED that from the final weeks of compensation the following

bearing on the meaning of an "award . . . for permanent disability or death" as stated in LE § 9-806.  For example, LE § 9-656(b) does not even use the word "award," but rather focuses on SIF's liability for preexisting diseases or infirmities.  And, although LE § 9-804(b) uses the word "award," its usage supports to an extent our holding as to LE § 9-806 by differentiating between an "award" and a "final compromise and settlement agreement" when it provides that any prior permanent disability payment received by the covered employee must be deducted.  In other words, LE § 9-804(b) creates a further distinction between those two separate sums of money.

Therefore, having found no error in the Commission's interpretation of LE § 9-806, we uphold its ruling in both cases and affirm the circuit courts' judgments.

> **JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AND THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**
> **COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANTS.**

---

fees shall be paid: Todd L. Schuler, Esquire in the amount of $4,954.16, (*after offset*)[.]" (Emphasis in original).