*Injured Workers' Insurance Fund v. Subsequent Injury Fund, et al.*, No. 39, September Term 2015, Opinion by Greene, J.

*Baltimore County, Maryland v. Subsequent Injury Fund, et al.*, No. 40, September Term 2015, Opinion by Greene, J.

**WORKERS' COMPENSATION ACT — SUBSEQUENT INJURY FUND ASSESSMENT — § 9-806**

The assessment payable to the Subsequent Injury Fund pursuant to Maryland Code (1991, 2008 Repl. Vol., 2015 Cum. Supp.) § 9-806 of the Labor and Employment Article is calculated based on the amount of an award prior to the statutory offsets for retirement benefits provided by §§ 9-610 and 9-503(e) of the Labor and Employment Article. This interpretation is based on the clear and unambiguous language of § 9-806 of the Labor and Employment Article and is consistent with the broad statutory scheme of the Workers' Compensation Act.

Circuit Court for Baltimore City
Case No. 24-C-13-008443
Circuit Court for Baltimore County
Case No. 03-C-13-014577

IN THE COURT OF APPEALS
OF MARYLAND

No. 39 and No. 40
September Term, 2015

---

INJURED WORKERS' INSURANCE FUND

v.

SUBSEQUENT INJURY FUND, et al.

---

BALTIMORE COUNTY, MARYLAND

v.

SUBSEQUENT INJURY FUND, et al.

---

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
     Specially Assigned),

JJ.

---

Opinion by Greene, J.

---

Filed: April 22, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

The two cases before us arise out of decisions from the Workers' Compensation Commission ("the Commission"). In both cases, the Commission concluded that under Md. Code (1991, 2008 Repl. Vol., 2015 Cum. Supp.), § 9-806 of the Labor and Employment Article ("LE"),[1] the amount owed to the Subsequent Injury Fund ("the SIF" or "the Fund") by the employers, the Maryland Transit Administration ("the MTA")[2] and Baltimore County ("the County"), is 6.5% of the Commission's award of compensation prior to the deduction of any statutory offset.

In the first case, the employer, the MTA, filed in the Circuit Court for Baltimore City a petition for judicial review of the Commission's decision in the MTA's case. On April 21, 2014, after a hearing, the Honorable Pamela J. White of the Circuit Court for Baltimore City entered an Order affirming the decision of the Commission. The MTA filed a timely Notice of Appeal to the Court of Special Appeals. In the second case, the employer, the County, filed in the Circuit Court for Baltimore County a petition for judicial review of the Commission's decision in the County's case. Subsequently, both the County and the SIF filed Motions for Summary Judgment. A hearing was held on July 29, 2014 before the Honorable Ruth A. Jakubowski of the Circuit Court for Baltimore County. Judge Jakubowski found that there were no issues of disputed fact and that the issue was strictly

---

[1] Unless otherwise indicated, all statutory references hereinafter are to the Maryland Workers' Compensation Act, codified at Md. Code (1991, 2008 Repl. Vol., 2015 Cum. Supp.), Title 9 of the Labor and Employment Article.

[2] The MTA is insured by the Injured Workers' Insurance Fund ("IWIF") and represented by its counsel. IWIF is the third party administrator of the MTA's Self-insured Workers' Compensation program and is responsible for paying the SIF assessment pursuant to LE § 9-806.

a matter of legal interpretation. On the same day, Judge Jakubowski entered an Order

granting the SIF's Motion for Summary Judgment and denying the County's. The County

filed a timely Notice of Appeal to the Court of Special Appeals. On December 17, 2014,

the Court of Special Appeals granted the MTA's and the County's Joint Motion to

Consolidate the cases. In a reported opinion, the Court of Special Appeals affirmed the

judgments of the Circuit Court for Baltimore City and the Circuit Court for Baltimore

County. *Injured Workers' Ins. Fund v. Subsequent Injury Fund*, 222 Md. App. 347, 112

A.3d 1092 (2015). The MTA and the County each filed a petition for writ of certiorari with

this Court in the cases of *Injured Workers' Ins. Fund v. Subsequent Injury Fund*, 443 Md.

234, 116 A.3d 474 (2015) and *Baltimore Cty. v. Subsequent Injury Fund*, 443 Md. 234, 116

A.3d 474 (2015), respectively. We granted *certiorari* in both cases and consolidate them in

this opinion to address the common question, which we have rephrased:[3]

> Should the SIF assessment under LE § 9-806 be calculated based on the
> amount of an award prior to the statutory offsets granted by §§ 9-610 and 9-
> 503(e)?

---

[3] The MTA presented the following question:
> Should the Subsequent Injury Fund Assessment be calculated based on the
> amount of the workers' compensation award prior to or after the pension
> offset granted under Labor and Employment Article, § 9-610?

The County presented the following question:
> Whether the County, when entitled to a statutory offset against an award of
> permanent partial disability issued by the Workers' Compensation
> Commission, is obligated to pay the Subsequent Injury Fund Assessment
> based on the amount of the award before or after the offset is calculated?

2

We shall answer this question in the affirmative and affirm the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

The SIF originated in Chapter 637 of the Acts of 1945.[4] It was created by the General Assembly for the purpose of encouraging employers to employ disabled individuals "by limiting the [employer's] liability . . . in the event the previously disabled or injured individual sustained a subsequent occupational injury, although not of itself disabling, but which, coupled with previous impairment, rendered the individual permanently disabled." *Anchor Motor Freight, Inc. v. Subsequent Injury Fund*, 278 Md. 320, 324, 363 A.2d 505, 508 (1976) (citing *Subsequent Injury Fund v. Pack*, 250 Md. 306, 308, 242 A.2d 506, 508 (1968)). In the event an employee with a previous impairment suffers a subsequent injury on the job, the employer is liable to the employee only for injuries attributable to the work-related injury. *See* LE § 9-802. The SIF compensates the employee for the proportion of the injury that is attributable to a pre-existing condition. *Id.*

The SIF has only one source of revenue.[5] It is funded by a 6.5% statutory assessment

---

[4] At its inception, the Fund was known as the Second Injury Fund. When Chapter 809 of the Acts of 1963 repealed and re-enacted, with amendments, Section 66 of Article 101, it abolished the Second Injury Fund and established the SIF. In 1991, Article 101 was recodified as Title 9 of LE. *See* 1991 Md. Laws, Chap. 8; Chap. 21.

[5] When the Second Injury Fund was first created by Chapter 637 of the Acts of 1945, the Fund's sole source of income was "produced by charges against employers or their indemnitors at a flat rate per accidental injury." *Subsequent Injury Fund v. Howes*, 11 Md. App. 325, 329, 274 A.2d 131, 133 (1971).

imposed on employers and insurers for "(i) each award against an employer or its insurer for permanent disability or death, including awards for disfigurement and mutilation; [or] (ii) . . . each amount payable by an employer or its insurer under a settlement agreement approved by the commission . . . ."[6] LE § 9-806(a). The assessment "is for [the] payment of claims submitted to the Subsequent Injury Fund and is not a tax intended to benefit the State." LE § 9-806(e).

## The MTA Award

On November 22, 2010, claimant, Salvatore Glorioso, Jr. ("Glorioso"),[7] suffered a work-related injury in the course of his employment with the MTA. He subsequently filed a claim with the Commission. After a hearing, the Commission issued an Award of Compensation on September 11, 2012. It found that Glorioso sustained permanent partial disability "amounting to 30% industrial loss of use of the body as the result of an injury to the back." To compensate for this permanent partial disability, the Commission awarded weekly payments of $307.00 for a period of 150 weeks, for a total award of $46,050.00.

---

[6] The assessment began at 1%, but was gradually increased to ensure the solvency of the Fund. *See* 1963 Md. Laws, Chap. 809. Chapter 154 of the Acts of 1967 increased the 1% assessment to 2%. The 2% assessment was increased to 3% in 1973. *See* 1973 Md. Laws, Chap. 608. As of 1987, the assessment was 5% as to awards and settlements approved on and after June 1, 1963 and prior to July 1, 1987. *See* 1987 Md. Laws, Chap. 442. The 6.5% assessment applies to all awards and settlements approved on and after July 1, 1987. *Id.*

[7] Glorioso is not a party to this appeal.

4

The MTA was, however, entitled to an offset under LE § 9-610[8] because Glorioso also

_____

[8] LE § 9-610 provides:

    (a) *Covered employee of governmental unit or quasi-public corporation.*

        (1) Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title.

        (2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.

        (3) The computation of an additional benefit payable under paragraph (2) of this section shall be done at the time of the initial award and may not include any cost of living adjustment after the initial award.

    (b) *Covered employee of Military Department of the State.*

        (1) If federal law provides benefits for an individual who is a covered employee of the Military Department of the State under § 9-215 of this title that are equal to or greater than the benefits provided by this title, the covered employee is not entitled to benefits under this title.

        (2) If federal law provides benefits for a covered employee of the Military Department of the State that are less than the benefits provided by this title, the State and its insurer shall provide an additional benefit that equals the difference between the benefit provided by federal law and the similar benefit provided by this title.

    (c) *Powers of Commission.*

        (1) The Commission may: (i) determine whether any benefit provided by the employer is equal to or greater than any benefit provided for in this title; and (ii) make an award against the employer or the Subsequent Injury Fund or both to provide an additional benefit that equals the difference between the benefit provided by the employer and the benefits required by this title.

(continued...)

received disability retirement benefits from the MTA. The offset of $118.27 per week lowered the final amount of compensation to $28,390.50.

On August 9, 2013, the SIF filed Issues with the Commission, stating "[t]he Employer and Insurer refuse to pay the 6.5% assessment on the award dated 9/11/12." The SIF took the position that "the assessment is due on the amount of the award regardless of any offset for retirement benefits" and requested a hearing on the issue. Following a hearing, the Commission issued an Order on December 17, 2013 requiring the MTA to pay the 6.5% assessment on the amount of compensation prior to offset. It stated that, "[t]he Commission gave or awarded the claimant 30% industrial loss of use of the body as a result of injuries to the back." Basing its decision on the rules of statutory construction,[9] it explained that "the 6.5% assessment is on the amount that the Commission gave to the claimant[,] which is 30%."

---

[8](...continued)
> (2) A claim that comes under this section is subject to the continuing powers and jurisdiction of the Commission.

[9] Providing case citations, Commissioner Kimberly Smith Ward discussed the rules of statutory construction as follows:
> The primary rule of statutory construction is to ascertain and effectuate legislative intent. Whack v. State, 338 Md. 665 (1994). The primary source of legislative intent, the words of the statute, must be given their ordinary and natural meaning. Whack v. State, 338 Md. 665 (1994). To determine the ordinary meanings of those words, it is helpful to consult their dictionary definitions. Bd. of Educ. of Prince Geroge's County v. Marks-Sloan, 428 Md. 1 (2012). Merriam Webster Collegiate Dictionary defines "award" as "to give by judicial decree." Merriam Webster Collegiate Dictionary (11th ed. 2003). In other words, an award is the amount given by the Commission.

6

In the December 17, 2013 Order, the Commission also addressed the MTA's argument that the assessment should be on the amount payable, i.e., the amount the employer owes after the offset. The Commission concluded that "[a]n assessment on an amount payable is <u>only</u> for a settlement agreement." (emphasis in original). It noted that LE § 9-806(a)(1) distinguishes between settlement agreements and awards for permanent disability or death, using the phrase "amount payable" to impose the assessment on settlement agreements, but not to impose the assessment on awards for permanent disability or death.[10] Therefore, it reasoned that the phrase "amount payable" is inapplicable to the present case which involved an award of compensation for permanent disability.

**The County Award**

On May 13, 2002, claimant, a Baltimore County ("County") firefighter, Gary Shipp ("Shipp"),[11] became disabled as a result of hypertension and coronary artery disease. He filed a claim with the Commission. After a hearing, the Commission issued an Award of

---

[10] LE § 9-806(a)(1) provides:
> The Commission shall impose an assessment of 6.5%, payable to the Subsequent Injury Fund, on:
> (i) each *award* against an employer or its insurer for *permanent disability or death*, including awards for disfigurement and mutilation;
> (ii) except as provided in paragraph (2) of this subsection, each *amount payable* by an employer or its insurer under a *settlement agreement* approved by the Commission; and
> (iii) each amount payable under item (i) or (ii) of this paragraph by the Property and Casualty Guaranty Corporation on behalf of an insolvent insurer.
(emphasis added).

[11] Shipp is not a party to this appeal.

7

Compensation on March 5, 2012. It found that Shipp sustained permanent partial disability "amounting to 50% industrial loss of use of the body as the result of injuries to the body (hypertension) and coronary artery disease." To compensate for this permanent partial disability, the Commission awarded weekly payments of $525.00 for a period of 333 weeks, for a total award of $174,825.00. The County filed a request for rehearing when it realized the March 5, 2012 Award of Compensation did not account for the statutory offset that it was entitled to under LE § 9-503(e). The County pointed out that it had been paying Shipp service retirement benefits.[12] LE § 9-503(e) provides an offset to prevent the weekly total

---

[12] LE § 9-503(e) states:

(1) Except as provided in paragraph (2) of this subsection, any paid firefighter, paid fire fighting instructor, sworn member of the Office of the State Fire Marshal, paid police officer, paid law enforcement employee of the Department of Natural Resources, deputy sheriff of Anne Arundel County, Anne Arundel County detention officer, park police officer of the Maryland-National Capital Park and Planning Commission, deputy sheriff of Montgomery County, deputy sheriff of Baltimore City, Montgomery County correctional officer, deputy sheriff of Prince George's County, or Prince George's County correctional officer who is eligible for benefits under subsection (a), (b), (c), or (d) of this section or the dependents of those individuals shall receive the benefits in addition to any benefits that the individual or the dependents of the individual are entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the paid law enforcement employee of the Department of Natural Resources, a park police officer of the Maryland-National Capital Park and Planning Commission, firefighter, fire fighting instructor, sworn member of the Office of the State Fire Marshal, police officer, deputy sheriff, Prince George's County or Montgomery County correctional officer, or Anne

(continued...)

8

retirement benefits and occupational disease compensation from exceeding an employee's weekly salary. The Commission issued a new Award of Compensation on March 29, 2012 and rescinded the March 5, 2012 Award. The new Award of Compensation accounted for the LE § 9-503 offset. Shipp received service retirement benefits in the amount of $605.55 per week, which was subtracted from an average weekly salary of $800.00. This offset lowered the County's weekly rate of compensation to $194.45 per week for a period of 333 weeks, for a final compensation amount of $64,751.85.

The County paid the SIF 6.5% of the compensation amount after the statutory offset, $4,208.87. On January 28, 2013, the SIF filed Issues with the Commission, stating that "[t]he Employer and Insurer failed to pay the assessment of $11,363 or 6.5% of the award dated 5/5/12[sic]." Following a hearing, the Commission issued an Order on December 12, 2013.[13] As in the MTA's case, the Commission based its decision on the rules of statutory construction,[14] explaining that "the 6.5% assessment is on the amount that the Commission gave to the claimant, which is 50%." In the Commission's December 12, 2013 Order, using language identical to that used in the MTA Order, the Commission explained:

> Finally, the employer/insurer argue that the assessment should be on the amount payable, which is the actual amount the employer/insurer owe[s] after

---

[12](...continued)
     Arundel County detention officer.

[13] Commissioner Kimberly Smith Ward presided over the hearings and issued the orders in both cases.

[14] *See supra* note 9.

offset. On the contrary, subsection [LE § 9-806(a)(1)](ii) provides for an assessment of 6.5% on each amount payable by an employer or its insurer under a settlement agreement. An assessment on an amount payable is only for a settlement agreement. The parties agree that the order in this case was an award of compensation and not a settlement agreement. Therefore, the "amount payable" language is inapplicable.

(emphasis in original). It ordered Baltimore County and its insurer to "pay the assessment of 6.5% on the award of 50% loss of use of the body, as awarded under [the] Order dated March 29, 2012."[15]

---

[15] Based on the Commission's conclusion that the assessment in this case applied to the award prior to the offset, it appears that the Commission intended the 6.5% assessment to apply to the award described in Paragraph 2 of the *March 5, 2012* Award of Compensation. Paragraph 2 of the March 5, 2012 Award states in pertinent part:

PERMANENT PARTIAL DISABILITY: Under "Other Cases" amounting to 50% industrial loss of use of the body as the result of injuries to the body (hypertension) and coronary artery disease; at the rate of $525.00, payable weekly, beginning May 14, 2002, for a period of 333 weeks, pursuant to the provisions of Section 9-630 of the Labor and Employment Article.

Accordingly, in its brief, the County states it "was ordered to pay the assessment as stated in the March 5 award, *i.e.*, $11,363.63." This amount is the result of a 6.5% assessment on a total award of $174,825.00 ($525.00 x 333 weeks).

In contrast, Paragraph 2 of the March 29, 2012 Award of Compensation describes the amount payable by the County after the deduction of the service retirement offset under LE § 9-503(e):

PERMANENT PARTIAL DISABILITY: Under "Other Cases" amounting to 50% industrial loss of use of the body as the result of injuries to the body (hypertension) and coronary artery disease; at the rate of $194.45, payable weekly, beginning May 14, 2002, for a period of 333 weeks, pursuant to the provisions of Section 9-630 of the Labor and Employment Article.

10

## Standard of Review

In an appeal from the judicial review of an administrative agency's decision, "we look through the decisions of the circuit courts and intermediate appellate court, and evaluate the agency decision directly." *W.R. Grace & Co. v. Swedo*, 439 Md. 441, 452–53, 96 A.3d 210, 217 (2014). Pursuant to LE § 9-745(b), in each court proceeding under the Workers' Compensation Act, the decision of the Commission is presumed to be prima facie correct. "[T]his presumption does not extend to questions of law, which we review independently." *Montgomery Cty. v. Deibler*, 423 Md. 54, 60, 31 A.3d 191, 194 (2011). We have explained, however, that "[t]he Commission's interpretation of the statute it is charged with administering will be given deference unless its conclusions are based upon an erroneous conclusion of law." *Wal Mart Stores, Inc. v. Holmes*, 416 Md. 346, 359, 7 A.3d 13, 21 (2010).

## Discussion

Both the MTA and the County argue that the SIF assessment should be calculated based on the amount payable to the claimant after the statutory offsets provided by LE §§ 9-610 and 9-503(e) have been applied. The MTA first contends that the Commission's award is not limited to paragraph two, which grants permanent partial disability benefits. Rather, to determine the amount of the award, the separately numbered paragraphs,

11

including the paragraph describing the offset, must be read together.[16] As a result, the final award accounts for any deductions due to the statutory offset and is the amount payable to the claimant. Meanwhile, the County argues that in cases where there is a presumption of occupational disease pursuant to LE § 9-503, the County pays an inflated assessment if the SIF assessment is applied to the award prior to the offset. It reasons that because the application of the offset under LE § 9-503(e) only reduces the workers compensation benefit, rather than the claimant's service retirement benefits, applying the SIF assessment to the award prior to the offset is essentially an application of the assessment to the service retirement benefits. This, the County contends, is not authorized by the Workers' Compensation Act.[17]

---

[16] The MTA reasons that "award" clearly refers to the amount payable after the pension offset is applied because LE § 9-610(c)(ii) provides that the Commission may "make an award against the employer or the Subsequent Injury Fund or both to provide an additional benefit that equals the difference between the benefit provided by the employer and the benefits required by this title."

[17] Both the MTA and the County also focus on the stock language which appears at the end of every Commission's Award of Compensation:

> THIS AWARD IS SUBJECT TO A TOTAL ASSESSMENT OF SIX AND ONE-HALF PERCENT (6.5%) ON THE AMOUNT PAYABLE PURSUANT TO LABOR AND EMPLOYMENT ARTICLE, § 9-806 (SUBSEQUENT INJURY FUND ASSESSMENT); ANNOTATED CODE OF MARYLAND. THE EMPLOYER OR INSURER SHALL PAY THE ASSESSMENT TO THE SUBSEQUENT INJURY FUND WITHIN THIRTY (30) DAYS FROM THE DATE OF INVOICE, IN ACCORDANCE WITH THE INSTRUCTIONS THEREON.

The MTA contends that the phrase "amount payable" in this stock language indicates that the "award" for purposes of calculating the SIF assessment is based on the post-offset

(continued...)

12

In response, the SIF argues that the language, structure, purpose and history of LE § 9-806 support the Commission's interpretation that the SIF assessment applies to the entire award, regardless of any statutory offsets. The SIF reasons that LE § 9-806 specifically provides that the Commission must impose a 6.5% assessment on each award for permanent disability or death. It states that the intermediate appellate court correctly recognized, "the 'award' itself is based on the claimant's 'permanent disability,' which does not change simply because the employer is entitled to an offset for some other reason." *Injured Workers' Ins. Fund*, 222 Md. App. at 356, 112 A.3d at 1098. Therefore, the offset has no effect on the claimant's percentage loss to the body because the award for permanent disability itself remains the same even if the final amount payable by an employer is reduced by an offset. *Injured Workers' Ins. Fund*, 222 Md. App. at 357, 112 A.3d at 1098.

All parties cite LE § 9-608 as the statute providing for the SIF assessment. LE § 9-806(a)(1) provides in pertinent part:

The Commission shall impose an assessment of 6.5%, payable to the

---

[17](...continued)
amount that the employer actually pays to the claimant. Meanwhile, the County argues that the use of "amount payable" in the stock language indicates that the Commission has rendered conflicting decisions in its interpretation of LE § 9-806. As we will discuss, the language of LE § 9-806 clearly and unambiguously indicates that the SIF assessment is calculated based on the amount of the award prior to the statutory offsets of § 9-610 and 9-503(e). Further, the SIF correctly indicates that the stock language at the bottom of each award is not part of the Commission's interpretation of the statute. Rather, the Commission's interpretation of the statute is contained in the December 17, 2013 and December 12, 2013 orders it issued in the MTA's and the County's cases, respectively. Neither of these orders contain the aforementioned stock language.

13

Subsequent Injury Fund, on: (i) each award against an employer or its insurer for permanent disability or death, including awards for disfigurement and mutilation; (ii) except as provided in paragraph (2) of this subsection, each amount payable by an employer or its insurer under a settlement agreement approved by the Commission; and (iii) each amount payable under item (i) or (ii) of this paragraph by the Property and Casualty Guaranty Corporation on behalf of an insolvent insurer.

Citing *State Dep't of Assessments & Taxation v. Md.-Nat'l Capital Park & Planning Comm'n*, 348 Md. 2, 702 A.2d 690 (1997), the MTA contends that the court should apply the ordinary and natural meaning of the term "award" under § 9-806(a)(1)(i) because "award" is not defined by the Worker's Compensation Act. In an effort to demonstrate the ordinary and natural meaning of the term "award," the MTA provides various dictionary definitions of the word.[18] Based on the definitions the MTA puts forth, it reasons that the award consists of what was ultimately paid to the claimant after the deduction for the offsets. The MTA's reference to dictionary definitions of the term "award" misconstrues the canons

---

[18] The MTA cites to MERRIAM WEBSTER COLLEGIATE DICTIONARY 86 (11th ed. 2003) for several definitions of "award," which differs depending on the use of the term:
> *v*[*erb*] *t*[*ransitive*] 1: to give by judicial decree or after careful consideration
> 2: to confer or bestow as being deserved or merited or needed
>
> *n*[*oun*] 1 *a*: a judgment of final decision; *esp*: the decision of arbitrators in a case submitted to them *b*: the document containing the decision of arbitrators
> 2: something that is conferred or bestowed especially on the basis of merit of need

We note that "award" as defined by BLACK'S LAW DICTIONARY 164 (Bryan A. Garner ed., 10th ed. 2014) is:
> *n*[*oun*]. A final judgment or decision, esp. one by an arbitrator or by a jury assessing damages.
> *v*[*er*]*b*. To grant by formal process or by judicial decree.

14

of statutory interpretation.[19]

It is true that "in deciding what a term's ordinary and natural meaning is, we may, and often do, consult the dictionary." *State Dep't of Assessments & Taxation*, 348 Md. at 14, 702 A.2d at 696. We, however, keep in mind that "[t]he cardinal rule of statutory interpretation is to give effect to the legislative purpose or policy." *State Dep't of Assessments & Taxation*, 348 Md. at 13, 702 A.2d at 696. The canons of statutory construction are firmly established in the State of Maryland. The primary source from which we determine legislative intent "is the language of the statute itself." *Schweitzer v. Brewer*, 280 Md. 430, 438, 374 A.2d 347, 352 (1977). "We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature chose to use or engage in forced or subtle interpretation in an attempt to extend or limit the

---

[19] The MTA also cites numerous other provisions in the Workers' Compensation Act to support its interpretation that LE § 9-806 requires calculating the SIF assessment on the amount payable post-offset. It cites LE §§ 9-610(a)(2), 9-731, 9-804(b), and 9-656, and, 9-806(c). In citing LE §§ 9-806(c), 9-656, and 9-731, the MTA essentially argues that the use of the term "compensation" in these statutes indicates that the payment of the assessment under § 9-806 should be based on the amount payable. In citing the language of LE § 9-804(b), the MTA argues that in making an award against the SIF, the Commission must deduct the amount of all prior permanent disability payments received by the covered employee from the award. From this language, the MTA states that it would be illogical to make a deduction under § 9-804(b) on amounts the claimant did not receive. The MTA then analogizes this with the facts of its case without any further explanation. Finally, the MTA states that based on LE § 9-610(a)(2), when there is a complete offset of benefits, it cannot be the case that the employer must pay the SIF assessment when the "claimant and claimant's attorney are not receiving any monetary compensation from the award." We are unpersuaded by this argument because, as we will discuss, the MTA's interpretation of LE § 9-806 contravenes the statutory scheme of the Workers' Compensation Act.

15

statute's meaning." *Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302, 783

A.2d 667, 671 (2001).  We have also previously stated that:

> We [] do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.  We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

*Bd. of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. 1, 19, 50 A.3d 1137, 1148

(2012).  Furthermore, where a case involves the Workers' Compensation Act, "we also

endeavor to interpret its provisions liberally, where possible, in order to effectuate the broad

remedial purpose of the statutory scheme."  *W.M. Schlosser Co. v. Uninsured Employers'*

*Fund*, 414 Md. 195, 203, 994 A.2d 956, 961 (2010).

As the SIF points out, the MTA's interpretation of the term "award" ignores the fact

that LE § 9-806(a)(1)(i) specifically states that "an assessment of 6.5%, payable to the

Subsequent Injury Fund" applies to "each award . . . for permanent disability or death" rather

than the term "award" in the abstract.  Citing MERRIAM WEBSTER COLLEGIATE DICTIONARY

86 (11th ed. 2003), the Commission in both the MTA and the County Orders defined

"award" as "to give by judicial decree."  Paragraph two of both the MTA and the County

Awards of Compensation describes the award for permanent partial disability in terms of a

percentage of industrial loss of use to the body as a result of injuries to the body.  Based on

this percentage, the claimant is entitled to a certain amount of weekly payments.  As the

16

Court of Special Appeals duly noted, "the 'award' itself is based on the claimant's 'permanent disability,' which does not change simply because the employer is entitled to an offset for some other reason." *Injured Workers' Ins. Fund*, 222 Md. App. at 356, 112 A.3d at 1098. A construction of LE § 9-806(a)(1)(i) "so as to give effect to each word so that no word, clause, sentence or phrase is rendered superfluous or nugatory" demonstrates clear and unambiguous legislative intent that the SIF assessment of 6.5% is determined based on each award for permanent disability or death prior to any statutory offsets. *Foley v. K. Hovnanian at Kent Island, LLC*, 410 Md. 128, 152, 978 A.2d 222, 237 (2009).

As the Commission correctly expressed, the language used in LE § 9-806(a)(1) provides further proof of the General Assembly's intent to have the SIF assessment calculated based on the amount of an award prior to any statutory offsets for retirement benefits. Whereas pursuant to subsection (i), LE § 9-806(a)(1) imposes "an assessment of 6.5%" on "*each award* . . . for permanent disability or death" pursuant to subsection (i), it imposes the same assessment on "each *amount payable* . . . under a settlement agreement" pursuant to subsection (ii). (emphasis added). In both cases, the Commission noted this contrasting language, and concluded: "An assessment on an amount payable is only for a settlement agreement. The parties agree that the order in this case was an award of compensation and not a settlement agreement. Therefore, the 'amount payable' language is inapplicable." (emphasis in original). The General Assembly chose to use different language to impose the SIF assessment on awards for permanent disability or death as

17

compared to settlement agreements. This evidences the clear intent of the General Assembly to have the 6.5% assessment applied to the entire award for permanent disability or death rather than the amount payable after deductions are made for offsets.

The Commission's interpretation is also consistent with the purpose of the SIF as well as the purpose of the statutory offsets. The SIF assessment "is essential to the Fund's solvency." *Cooper v. Wicomico Cty., Dep't of Pub. Works*, 284 Md. 576, 583, 398 A.2d 1237, 1241 (1979). When an individual with a pre-existing condition is injured on the job, an employer's liability is limited by "allocating to the employer liability for the effects of the subsequent injury and to the Fund the liability for the effects of the prior impairment." *C. & P. Tel. Co. of Md. v. Subsequent Injury Fund*, 53 Md. App. 508, 511, 453 A.2d 1243, 1244, *aff'd sub nom. C & P Tel. Co. of Md. v. Subsequent Injury Fund*, 297 Md. 339, 466 A.2d 39 (1983). By limiting an employer's liability, the General Assembly sought to encourage employers to hire individuals with prior disabilities or injuries. *See Anchor Motor Freight, Inc.*, 278 Md. at 324, 363 A.2d at 508.

Meanwhile, with regard to LE §§ 9-610 and 9-503(e), "the unmistakable intent of the Legislature since 1914 has been to provide only a single recovery for governmental employees covered by both a pension plan and workers' compensation." *Mayor & City Council of Baltimore v. Polomski*, 106 Md. App. 689, 697–98, 666 A.2d 895, 899 (1995), *aff'd sub nom. Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 684 A.2d 1338 (1996); *see also Frank v. Baltimore County*, 284 Md. 655, 399 A.2d 250 (1979). Imposing

18

the SIF assessment on each award for permanent disability or death prior to deduction of the statutory offsets pursuant to LE §§ 9-503 and 9-610, fits within the statutory scheme of the Worker's Compensation Act. The offsets fulfill the General Assembly's goal of preventing an employee from obtaining double recovery for one injury while ensuring the survival of the SIF. Accordingly, the MTA and the County's interpretation of LE § 9-806 cannot stand because if the SIF assessment is calculated based on the amount the employer pays after the deduction of the statutory offsets, the SIF would lose a significant amount of revenue. A loss of revenue would hinder the SIF's ability to reduce the amount an employer or its insurer pays in workers' compensation in cases where an employee with a pre-existing condition suffers a subsequent injury. As the Court of Special Appeals concluded, calculating the SIF assessment based on the pre-offset award "does not place a double burden on the public employer . . . because the employer or its insurer pays no more to [the] SIF than it would have paid had the employee not received any offsetting disability retirement benefits." *Injured Workers' Ins. Fund*, 222 Md. App. at 358, 112 A.3d at 1099.

The Commission's interpretation of LE § 9-806 in the MTA and the County's cases is supported by the plain language of LE § 9-806 and permits the statute to coexist harmoniously with §§ 9-610 and 9-503(e). Therefore, we hold that the SIF assessment under LE § 9-806 is calculated based on the amount of an award prior to the deduction of the statutory offsets for retirement benefits.

19

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY THE PETITIONERS.**