*Mark Zukowski, et al. v. Anne Arundel County*, No. 14, September Term, 2024. Opinion by Eaves, J.

**MD. CODE ANN., LABOR AND EMPLOYMENT § 9-610(a)(1) – STATUTORY OFFSET OF BENEFITS – SUBSEQUENT ENTITLEMENT TO ATTORNEY'S FEES** The Supreme Court of Maryland held that, in calculating an award of attorney's fees for representing an injured employee under Maryland's Workers' Compensation Act, an attorney is entitled to a percentage of the compensation awarded by the Maryland Workers' Compensation Commission—after applying the statutory offset in § 9-610(a)(1) of the Labor and Employment Article of the Annotated Code of Maryland.

IN THE SUPREME COURT

OF MARYLAND

No. 14

September Term, 2024

---

MARK ZUKOWSKI, ET AL.

v.

ANNE ARUNDEL COUNTY

---

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough

JJ.

---

Opinion by Eaves, J.

---

Filed: April 24, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

# I
# INTRODUCTION

In this case, we are asked to decide how to determine attorney's fees under the Maryland Workers' Compensation Act ("the Act" or "the WCA"), which requires employers to provide compensation to employees who have sustained work-related injuries. The Act, codified as Title 9 of the Labor and Employment Article ("L&E") (2016 Repl. Vol.), is a robust and complex statutory scheme.[1] Thus, it is no surprise that injured workers generally have better odds at securing benefits under the Act when they hire competent legal counsel.[2] And typically, excluding matters taken on a *pro bono* basis, lawyers expect to be compensated for their legal services.

The WCA is unique in that it places restrictions on an attorney's ability to charge and collect fees. For instance, to collect a fee for a claim filed under the Act, an attorney is required to seek approval from the State Workers' Compensation Commission ("the Commission"),[3] which has the authority to "hear and decide any question concerning legal

---

[1] *See Gleneagles, Inc. v. Hanks*, 385 Md. 492, 506 (2005) (noting that the Act is "a complicated and detailed system[]"); *Spevak v. Montgomery County*, 251 Md. App. 674, 705 (2021) ("[The] legal arena of disability retirement benefits and workers' compensation disability is exceedingly complex . . . .").

[2] *See* Bogdan Savych & David Neumark, *Impact of Attorney Representation on Workers' Compensation Payments*, Workers Comp. Rsch. Inst. 18, 32 (2024) (discussing a seven-year survey across 31 states—including Maryland—and concluding that there is a "positive and statistically significant effect of attorney involvement on indemnity benefits[]").

[3] L&E § 9-731(a).

services performed in connection with a claim."[4] Attorneys who represent injured workers before the Commission are paid from "an award of *compensation* only in the manner set by the Commission[,]"[5] and even then the Commission limits the amount that an attorney can collect.[6]

As employers, governmental entities in Maryland (State and local alike) are subject to the Act's provisions.[7] But separate and apart from WCA benefits, government employers sometimes offer their employees pension benefits. One such form of pension benefits is disability retirement benefits that are awarded because of an on-the-job injury, typically called "service-connected disability retirement benefits" or "accidental disability retirement benefits" ("ADR benefits").[8] The Act, however, prevents an employee from receiving duplicative ADR benefits and benefits under the Act. In other words, it prevents an employee from being compensated twice for the same injury. The Act does so through its offset provision, which states, in pertinent part, that if a covered employee receives other

---

[4] *Id.* § 9-731(c)(1).

[5] *Id.* § 9-731(a)(3) (emphasis added).

[6] *See generally* Code of Maryland Administrative Regulations ("COMAR") 14.09.04.03(C); *see also* L&E § 9-701 (instructing the Commission to, among other things, "adopt reasonable and proper regulations to govern the procedures of the Commission[]").

[7] L&E § 9-201(2) (noting that the Act applies to "each governmental unit . . . that has at least 1 covered employee[]"); *id.* § 9-101(f) (defining covered employee to mean "an individual listed in Subtitle 2 of this title for whom a person, a governmental unit, or a quasi-public corporation is required by law to provide coverage under this title[]").

[8] *See* 1 Clifford B. Sobin, MD Workers' Compensation § 16:1 (2024).

benefits, such as ADR benefits, then the "payment of th[os]e [other] *benefit[s]* by the employer satisfies . . . payment of similar benefits under this title."[9]

The parties in this case debate whether the use of different words—"compensation" in L&E § 9-731 and "benefits" in L&E § 9-610—has any significance as it pertains to an award of attorney's fees. Petitioners, Mark Zukowski and Joshua Ruggiero, two former corporals in the Anne Arundel County Police Department, were injured in the line of duty. Both were awarded ADR and WCA benefits. In both cases, the amount of ADR benefits exceeded the amount of WCA benefits, offsetting all WCA benefits except those paid during relatively brief periods before Anne Arundel County ("the County") awarded ADR benefits. Petitioners argue that "compensation" is broader than "benefit" and encompasses amounts awarded but not paid, such that an attorney's fee should be calculated based on the overall WCA "compensation" awarded to a claimant *before* calculating whether the claimant receives any actual WCA "benefits"—money paid after any offset under § 9-610 is applied. The County, on the other hand, contends that, at least here, the two terms are interchangeable, such that an attorney's fees are calculated only if there is an award of compensation/benefits *after* L&E § 9-610's offset provision has been applied, and only on the amount of the post-offset benefit.

We granted a writ of certiorari in this case[10] to resolve that dispute and answer the following question: Is an attorney's fee under L&E § 9-731 calculated before or after

---

[9] L&E § 9-610(a)(1) (emphasis added).

[10] *Zukowski v. Anne Arundel County*, 487 Md. 262 (2024).

applying the statutory offset under L&E § 9-610(a)(1)?[11]  Because we agree with the

Commission that an attorney's fee is calculated after applying the offset, we affirm the

judgment of the Appellate Court.

## II
## BACKGROUND

There is little contested in this case.  Neither side disputes the occurrence or severity

of Petitioners' on-the-job injuries, nor Petitioners' entitlement to benefits under the Act or

the scope of those benefits.  In addition, no one disputes that the County is entitled to a

statutory offset under L&E § 9-610.  Rather, this case concerns only the timing of when

the Act's offset provision applies and how we calculate an attorney's fees after a claimant

successfully obtains an award from the Commission.  Thus, we provide an overview of the

Act's pertinent provisions, as well as the applicable regulations, before recounting the

factual background and procedural history.

### A.    *The Statutory Scheme*

### 1. The Act's purpose and the Commission's authority

The overarching purpose of the Act is "to protect workers and their families from

hardships inflicted by work-related injuries[.]"  *Gang v. Montgomery County*, 464 Md. 270,

278 (2019) (quoting *Roberts v. Montgomery County*, 436 Md. 591, 603 (2014)).  It was

enacted to, among other things, "provide workers with compensation for loss of earning

---

[11] The question for which we originally granted certiorari, as framed in the petition, was: "Whether the General Assembly, when it adopted Md. Lab. & Empl. Art. § 9-610, intended to offset compensation or benefit to be paid directly to claimants."  We have exercised our prerogative to rephrase the question presented.  *See United Parcel Serv. v. Strothers*, 482 Md. 198, 205 (2022).

capacity resulting from accidental injury[.]" *Engel & Engel, P.A. v. Ingerman*, 353 Md. 43, 51 (1999) (quoting *Queen v. Agger*, 287 Md. 342, 343 (1980)).  And the Act ensures covered employees the "right to quick and certain compensation for injuries sustained during the course of their employment, regardless of fault."  *Rodrigues-Novo v. Recchi Am., Inc.* 381 Md. 49, 56 (2004) (quoting *Brady v. Ralph Parsons Co.*, 308 Md. 486, 496 (1987)).

The Commission determines whether a claimant is entitled to benefits.  L&E §§ 9-101–9-1201; *Feissner v. Prince George's County*, 282 Md. 413, 421 (1978) ("[T]he Commission . . . must . . . make a determination as to the amount and nature of [the injured worker's] compensation benefits to which a claimant would be entitled in the absence of collateral pension payments . . . .").  The Commission awards compensation based on its finding of the extent of an employee's injuries: temporary partial disability, L&E § 9-615, temporary total disability, *id.* § 9-621, permanent partial disability, *id.* §§ 9-626–9-630, or permanent total disability, *id.* § 9-637.

By the Act's offset provision, the General Assembly intended to "preclude [injured workers from] double-dipping into the same pot of *comparable* benefits."  *Spevak v. Montgomery County*, 480 Md. 562, 576 (2022) (quoting *Newman v. Subsequent Inj. Fund*, 311 Md. 721, 728 (1988)), *superseded by statute* 2023 Md Laws, ch. 410 § 2.  That provision states, in pertinent part:

> Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to

5

the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title.

L&E § 9-610(a)(1). Therefore, to the extent that a government employer's award of ADR benefits equals or exceeds that to which a covered employee otherwise would be entitled under the Act, then L&E § 9-610(a)(1) states that the ADR benefits awarded satisfy the employer's obligations under the Act. *Nooe v. City of Baltimore*, 28 Md. App. 348, 356 (1975). If, however, any ADR benefits paid by an employer are less than the benefits to which a covered employee would be entitled under the Act, then the employer, the Subsequent Injury Fund ("SIF"),[12] or both, pay the difference as determined by the Commission. L&E § 9-610(a)(2).

### 2. Attorney's fees under L&E § 9-731

Section 9-731 and the Code of Maryland Administrative Regulations ("COMAR") govern an award of attorney's fees by the Commission. "[A] person may not charge or collect a fee for[]" "legal services in connection with a [workers' compensation] claim" unless the Commission approves it. *Id.* § 9-731(a)(1)(i). In pertinent part, the relevant COMAR provision reads:

---

[12] The SIF was created to limit an employer's liability when "an employee with a previous impairment suffers a subsequent injury on the job[.]" *Injured Workers' Ins. Fund v. Subsequent Inj. Fund*, 447 Md. 211, 216 (2016). In such a circumstance, "the employer is liable to the employee only for injuries attributable to the work-related injury[,]" and the SIF "compensates the employee for the proportion of the injury that is attributable to a pre-existing condition." *Id.* The SIF is funded by a 6.5% assessment that is added onto, among other things, "each award against an employer or its insurer for permanent disability or death, including awards for disfigurement and mutilation[.]" L&E § 9-806(a)(1)(i).

[I]n a case in which a final award of compensation is made for permanent partial disability, the Commission may approve an attorney's fee in a total amount not exceeding 20 times the State average weekly wage and computed as follows:

(i) Up to 20 percent of the amount due for the first 75 weeks of an award of compensation awarded;

(ii) Up to 15 percent of the amount due for the next 120 weeks of an award of compensation; and

(iii) Up to 10 percent of the amount due for an award of compensation in excess of 195 weeks.

COMAR 14.09.04.03(B)(3)(a).[13] This schedule "does not represent an *entitlement* to a specific amount of attorney's fees, but merely establishes the *maximum* fee that will be permitted." *Workers' Comp. Comm'n v. May*, 88 Md. App. 408, 417 (1991).

---

[13] After Petitioners filed their claims with the Commission, the regulation governing attorney's fees was revised. At the time the claims were filed, the above-quoted language came from COMAR 14.09.04.03(B)(3). Effective April 3, 2023, the schedule of attorney's fees for permanent partial disability is located at COMAR 14.09.04.03(C)(3). The current provision reads, in pertinent part:

[I]n a case in which a final award of compensation is made for permanent partial disability, the Commission may approve an attorney's fee in a total amount not to exceed 60 times the State average weekly wage and computed as follows:

(i) Up to 20 percent of the first $50,000 of the total award of compensation;

(ii) Up to 15 percent of the next $50,000 of the total award of compensation; and

(iii) Up to 5 percent of the total award of compensation in excess of $100,000.

COMAR 14.09.04.03(C)(3)(a) (April 3, 2023). The regulation also has been revised to resolve the issue now before us. The April 3, 2023, revision added a new, defined term,

### B.      *Factual Background*

Petitioners were corporals in the Anne Arundel County Police Department, and both suffered injuries in the line of duty.  On July 3, 2018, Mr. Zukowski suffered a right-knee injury while arresting a suspect who was actively resisting him.  This injury necessitated two periods of medical leave during which Mr. Zukowski received full wages in lieu of WCA benefits: July 20, 2018, to October 17, 2018, and November 29, 2018, to February 16, 2019.  Mr. Zukowski resumed full-time work in a light-duty capacity on February 17, 2019; however, the County—on its own—awarded Mr. Zukowski ADR benefits beginning October 1, 2019.

On November 16, 2018, Mr. Ruggiero also was injured in the line of duty due to a suspect resisting arrest, resulting in severe physical and psychological injuries.  The County paid Mr. Ruggiero temporary total disability benefits from November 24, 2018, to July 10,

---

"award of compensation," which the Commission defines as "the amount of indemnity benefits actually paid or payable to the claimant after applying" "[a]ny credit or offset required by [L&E §§] 9-503(c), 9-609, or *9-610*[.]"  *Id.* 14.09.04.03(B)(2)(a)(i) (emphasis added).  Thus, while the issue this case now presents is no longer an issue as of April 3, 2023, we nevertheless must apply the law as it existed at the time Petitioners filed their claims.  *See Big Savage Refractories Corp. v. Geary*, 209 Md. 362, 372 (1956) (holding that the circuit court erred in retroactively applying a law that did not exist at the time the Commission rendered its decision).  Furthermore—consistent with our principles of statutory interpretation—we give no weight to the Commission's subsequent revision to the regulation now before us.  *Cf. Brown v. State*, 470 Md. 503, 543 n.45 (2020) ("In general, [p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation . . . ." (alterations in original) (internal quotation marks omitted) (quoting *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011))).  Going forward, unless otherwise indicated, we will refer to the COMAR provisions that were in effect at the time Petitioners filed their claims.

2019.[14]  Mr. Ruggiero returned to work in a light-duty capacity from July 11, 2019, to March 31, 2020.  As with Mr. Zukowski, the County, on its own initiative, granted Mr. Ruggiero ADR benefits beginning April 1, 2020.

Petitioners each hired the same attorney ("Counsel") to represent them before the Commission in their pursuit of WCA benefits.[15]

## C.     *Procedural History*

### 1. The Commission

After Counsel laid out for the Commission the predicating events for Petitioners' injuries, their medical complications, and their subsequent retirement, Counsel argued the issue now before this Court: the order of operations between the offset in L&E § 9-610(a)(1) and the payment of attorney's fees under L&E § 9-731.

Petitioners advanced two arguments to the Commission, the first of which was based on statutory construction.  According to Petitioners, the General Assembly enacted L&E § 9-610 to protect against a claimant receiving duplicate benefits.  Because the General

---

[14] The County and the Appellate Court stated that Mr. Ruggiero was paid full wages in lieu of disability benefits for this period. *In re Zukowski*, 260 Md. App. at 229.  However, the record reflects otherwise, as both the transcript of the Commission hearing and the Commission's award itself indicate that Mr. Ruggiero was paid temporary total disability benefits under the Act, not full wages.  Unlike in Mr. Zukowski's case, the record does not contain a notice of termination of those benefits, and no such notice was required by law. *See* L&E § 9-733(a)(1)(i) (noting that no notice is required if the covered employee returns to the current employment of the covered employee).  That such a notice *was* provided to Mr. Zukowski—when it otherwise was not required—makes no difference.

[15] The record does not indicate the dates on which the County granted ADR benefits to Petitioners; however, at oral argument in this Court, the County represented that, at the time Mr. Ruggiero retained Counsel, Counsel was aware that Mr. Ruggiero had been awarded ADR benefits.

Assembly used the defined term "compensation" in L&E § 9-731 and the undefined term "benefits" in L&E § 9-610, it clearly intended to prevent a claimant from receiving duplicative benefits without affecting an attorney's right to an earned fee. Any contrary construction, in Petitioners' view, would disincentivize attorneys from taking workers' compensation claims—an outcome the General Assembly surely did not intend. Petitioners claimed support for this interpretation from this Court's opinions in *Reger v. Washington County Board of Education*, 455 Md. 68 (2017), and *Injured Workers' Insurance Fund v. Subsequent Injury Fund*, 447 Md. 211 (2016) ("*IWIF*"). Alternatively, Petitioners argued that the Commission could treat an attorney's fees as analogous to an assessment that an employer would be ordered to pay into the SIF.

Petitioners' second argument was that to interpret L&E § 9-610's offset to apply before calculating an attorney's fees would be to render the statute unconstitutional because it would impermissibly "take away [an attorney's] time." As Counsel's "stock in trade[,]" Counsel "has a property interest for the time that she has committed, and the services that she has provided." It would be unconstitutional government action, Petitioners argued, for the Disability Retirement Board to "deprive[ Counsel] of all the work that she's done" by awarding a claimant ADR benefits. *See* Anne Arundel County Code §§ 5-1-107(b) ("There is a Disability Retirement Pension Review Board for each plan under this article."), 5-3-307(c) (establishing the requirements for "[s]ervice-connected disability retirement pension").

The County argued that Petitioners' arguments were policy determinations better suited for the General Assembly and that the law is clear that attorney's fees in these

10

matters act as "a lien against the claimant's benefits." The County rejected the notion that the Commission has the authority to enter a second, separate award against the County for attorney's fees and argued that any such award would contravene the Act's plain text that attorney's fees act as a lien.

The Commission found that Mr. Zukowski was entitled to benefits under the Act. The Commission awarded Mr. Zukowski permanent partial disability benefits for 200 weeks, payable at $365 per week, beginning on February 17, 2019, for a total award of $73,000. The Commission further determined that the County was entitled to a statutory offset of benefits under L&E § 9-610 of $1,195.15 per week beginning on October 1, 2019 (the date Mr. Zukowski began receiving ADR benefits). Because this amount exceeded the weekly rate of $365 awarded by the Commission, Mr. Zukowski was only entitled to receive WCA benefits for the gap period between February 17, 2019, and September 30, 2019.[16] This resulted in a total award of approximately $11,680. As most relevant to this appeal, the Commission agreed with the County that Counsel was entitled to an attorney's fee based on the "benefits *actually payable to* [Mr. Zukowski] *after the offset is applied*[.]" (Emphases added). Thus, the Commission ruled that Counsel was entitled to a fee of $1,752 ($11,680 x 15%).[17] Had the Commission agreed with Petitioners' interpretation of

_____

[16] The gap period here is the period of time where Petitioners were receiving less than full wages and otherwise were not receiving ADR benefits. In other words, it is the period of time where Petitioners are eligible for benefits under the Act that is not subject to the Act's offset provision (L&E § 9-610).

[17] Counsel's retainer agreement with Mr. Zukowski stipulated that she was to be paid 15% of any settlement or award her clients secured "in accordance with the Workers' Compensation Commission Fee Schedule." Counsel would not be owed any fee if Mr.

11

the Act, Counsel would have been paid $10,858.75 (($365 x 195 weeks x 15%) + ($365 x 5 weeks x 10%)).

As to Mr. Ruggiero, the Commission awarded him permanent partial disability payable at $821 per week, for 500 weeks, beginning on July 11, 2019, for a total award of $410,500. The Commission also determined that the County was entitled to a statutory offset of benefits of $1,191.73 per week beginning on April 1, 2020 (the date Mr. Ruggiero began receiving ADR benefits). Because Mr. Ruggiero's weekly ADR benefits surpassed the weekly rate of $821 under the Act, he was entitled to receive compensation benefits only for the gap period of July 11, 2019, to March 31, 2020, which reduced the total award to $30,787.50. The Commission likewise agreed that Counsel was entitled to a fee only for the gap period, resulting in a total fee of $6,157.50 ($30,787.50 x 20%).[18] Had the Commission agreed with Petitioners, Counsel would have been paid $52,133.50 (($821 x 75 weeks x 20%) + ($821 x 120 weeks x 15%) + ($821 x 305 weeks x 10%)).

## 2. The Circuit Court for Anne Arundel County

Petitioners filed separate petitions for judicial review in the Circuit Court for Anne Arundel County, which subsequently consolidated both actions. After a hearing, the circuit

---

Zukowski did not receive an award or settlement. We note that the agreed-upon "15%" was handwritten into the agreement, over an originally typed amount of "20%."

[18] The record does not contain an executed retainer agreement by Mr. Ruggiero. Despite appellate counsel's representation that he and his firm have a special arrangement to charge County officers only 15%, we presume that Mr. Ruggiero agreed to compensate Counsel at a rate of 20% of any compensation awarded (unlike Mr. Zukowski who received a rate of 15%) because the Commission's award of attorney's fees in Mr. Ruggiero's case amounts to 20% of the benefits awarded.

court concluded, in an August 2022 Memorandum Opinion, that the attorney's fees should be calculated after offsetting the Commission's award of WCA benefits with ADR benefits, not before, and affirmed the Commission's decisions as to both Petitioners.

The circuit court, like the Commission and as the County argued, did not find a distinction between the terms "benefits" and "compensation." It made no difference to the circuit court that COMAR 14.09.04.03(B)(3) uses the phrase "amount due" because it recognized that it is the language of L&E § 9-731 that "governs how an attorney's fee shall be paid—as opposed to the language of COMAR 14.09.04.03(B)(3)." The court further noted that L&E § 9-731(a)(3) requires that an attorney's fee be taken from "an award of compensation" and that subsection (a)(2) transforms the attorney's fee into a lien on the "compensation awarded." Quoting from the Appellate Court's decision in *Brunson v. University of Maryland Medical System Corp.*, 221 Md. App. 583, 601 (2015), the circuit court, thus, concluded that, "[a]s a result, 'where there was no actual amount due, given an offset due to another payment, there was no fund to which the attorney's fee could attach.'" Thus, the circuit court concluded that the attorney's fees must be calculated after the statutory offset. On September 1, 2022, Petitioners noted an appeal to the Appellate Court of Maryland.[19]

---

[19] Even though the circuit court consolidated both cases and called Mr. Zukowski's and Mr. Ruggiero's case numbers during the hearing, the circuit court's August 2022 Memorandum Opinion and accompanying order addressed only Mr. Zukowski's case and did not mention Mr. Ruggiero's. The September 2022 notice of appeal was captioned only with Mr. Zukowski's name and mentioned Mr. Zukowski as the only appellant. Nevertheless, both Mr. Zukowski and Mr. Ruggiero argued their cases at oral argument in the Appellate Court. The Appellate Court *sua sponte* raised concerns about the finality of judgment in Mr. Ruggiero's case and, prior to issuing its opinion, instructed the circuit

### 3. The Appellate Court of Maryland

In a reported opinion, the Appellate Court of Maryland affirmed the judgment of the circuit court. *In re Zukowski*, 260 Md. App. 220, 245 (2024). After discussing L&E §§ 9-610 and 9-731, as well as this Court's opinion in *Feissner* and the Appellate Court's own opinion in *Brunson*, the Appellate Court held that an "attorney's fee is calculated from the actual amount due to the claimant of the compensation award given the offset." *Id.* at 242.

The court reasoned that an initial compensation award before applying the statutory offset "does not in and of itself constitute an award of compensation . . . out of which a lien for counsel fees could be satisfied." *Id.* (quoting *Feissner*, 282 Md. at 421). The Appellate Court opined that if the regulation permits the Commission to approve the attorney's fee up to specific amounts of "the amount due" for an "award of compensation[,]" the attorney's fee is permitted upon an "award payable" or "actual amount due" to the claimant given the offset. *Id.* (citing *Brunson*, 221 Md. App. at 597). The actual amounts due are

_____

court to enter a separate written judgment as to Mr. Ruggiero. On June 20, 2023, the circuit court issued an order disposing of the consolidated action, including the names and case numbers of Mr. Zukowski and Mr. Ruggiero. The next day, Petitioners filed a new notice of appeal captioned with both Mr. Zukowski's and Mr. Ruggiero's names, which was docketed and assigned a new case number. As the Appellate Court noted, however, the substance of the new notice of appeal again failed to mention Mr. Ruggiero. *In re Zukowski*, 260 Md. App. at 230. Thus, the Appellate Court had to address the threshold issue of whether "Mr. Zukowski's second notice of appeal was adequate to note an appeal for Mr. Ruggiero." *Id.* at 231. The Appellate Court concluded that the notice was adequate. *Id.* at 232–33. That holding was not challenged in this Court, so we do not discuss that matter further.

funds "on which the attorney's lien[s] . . . can attach or from which payment of legal fees can be compelled." *Id.* (quoting *Feissner*, 282 Md. at 421).

Furthermore, the Appellate Court rejected the argument that there is a difference between "benefits" and "compensation" because that "disregards the interplay of the statutory schemes and the cases interpreting it." *Id.* at 242–43. Applying Petitioners' interpretation would result in a reduced or complete elimination of the claimant's compensation award without affecting the attorney's fee because the claimant—and not the employer—is liable for the attorney's fee. *Id.* at 243. Finally, the court explained that Petitioners' suggestion that the County is responsible for paying the attorney's fee rather than affecting the claimant's amount "contradicts the established principle that an award of attorney's fees is not an 'add-on' or 'double' benefit that the employer or insurer must pay injured workers on top of the compensation award itself." *Id.* (quoting *Feissner*, 282 Md. at 418). Thus, the Appellate Court affirmed the judgment of the circuit court. *Id.* at 245.

### III
### STANDARD OF REVIEW

There are only three grounds on which to appeal a decision from the Commission: whether the Commission "(1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia; (2) exceeded the powers granted to it under this title; or (3) misconstrued the law and facts applicable in the case decided." L&E § 9-745(c). The Commission's decision is "presumed to be prima facie correct." *Id.* § 9-745(b)(1). But this "presumption of correctness does not extend to questions of law, which

15

this Court independently reviews." *Spevak*, 480 Md. at 568.[20] In reviewing an appeal originating from the decision of an administrative agency, such as the Commission, this Court does not review the decision of the circuit court or the Appellate Court of Maryland, but rather it reviews the administrative agency's decision. *United Parcel Serv. v. Strothers*, 482 Md. 198, 210 (2022) ("In conducting our review, we analyze the Commission's decision and look through the decisions of both the circuit court and [the Appellate] Court . . . .").

**IV**
**ANALYSIS**

Before this Court, the parties advance the same arguments they made before the Commission. Petitioners argue that the offset provision requires attorney's fees to be calculated before applying the offset. In support of their argument, Petitioners posit that

---

[20] It is unclear whether the parties agree on the level of deference—if any—owed to the Commission's interpretation of L&E § 9-610. Quoting from *Frey v. Comptroller of Treasury*, 422 Md. 111, 138 (2011), the County asserts that this "Court affords 'great weight to the agency's legal conclusions when they are premised upon an interpretation of the statutes that the agency administers and the regulations promulgated for that purpose.'" Petitioners, on the other hand, argue that this case presents an issue of statutory interpretation, which is a "judicial function" solely within this Court's province as the interpreter of the General Assembly's enactments.

In *Comptroller of Maryland v. FC-GEN Operations Investments LLC*, this Court clarified that it utilizes a sliding scale approach in determining whether it affords deference to an agency's interpretation of a statute or regulation that the agency administers. 482 Md. 343, 363 (2022). We look to a number of factors, such as whether: (1) "the [agency's] interpretation resulted from a process of 'reasoned elaboration' by the agency," (2) "the agency has applied that interpretation consistently over time," and (3) "the interpretation is the product of contested adversarial proceedings or formal rule making." *Id.* (quoting *Md. Dep't of the Env't v. Cnty. Comm'rs of Carroll Cnty.*, 465 Md. 169, 203–04 (2019)). None of the factors we mentioned in *FC-GEN* is evident from this record, and the County has not explicitly argued as such. Thus, we apply no deference in this case.

the General Assembly's use of the terms "compensation" and "benefits" was an intentional choice and signals that "[L&E] § 9-610, by its plain language, offsets only the compensation that would have otherwise resulted in a claimant receiving duplicative benefits[.]" Thus, according to Petitioners, because § 9-610 "limits its preclusive effect to duplicative 'benefits,'" which is different from "compensation," the statute leaves "the portions of compensation awards that are not payable to the Claimant un-offset."

Petitioners also advance the same constitutional argument as before: Interpreting L&E § 9-610 as the County suggests permits the County to wipe out Counsel's fee (because the County alone decided to award ADR benefits), which is an unconstitutional deprivation of Counsel's property interest in her own time. Before this Court, Petitioners now argue that *Feissner* does not resolve the issue presented here because "the attorney in *Feissner* did not pursue payment of his fee at the Commission," and alternatively ask us to overrule *Feissner* because, in Petitioners' view, it "rests on a flawed reading of the legislatively intended scope of [§] 9-610 offsets[.]"

The County likewise reiterates its arguments made to the Commission. The County contends that, under L&E § 9-731, the payment of attorney's fees comes directly out of the award of compensation or the benefits that the claimant is entitled to, rather than "an add-on or double benefit which the employer or its insurer must pay injured workers or their attorneys in addition to the compensation award itself." Petitioners' interpretation, says the County, would transform legal fees into just that—an add-on benefit. The County highlights the problems that arise with Petitioners' interpretation, including Petitioners' inability to "address where those payments would come from [because] [a]ny fee received

17

by an attorney in a Workers' Compensation case is money that would otherwise be payable to the claimant." Thus, the County believes that, in enacting L&E § 9-610, the General Assembly did not intend to alter in any way the "principle that attorney's fees are a lien against the injured workers' award of compensation and make [an attorney's fee] an independent and new obligation of the employer/insurer beyond what was paid to the worker."

For the reasons discussed below, we agree with the County's interpretation and will affirm the judgment of the Appellate Court.

## A.    L&E § 9-610's Offset Applies Before Calculating an Attorney's Fees

"The cardinal rule of statutory construction is to ascertain and effectuate" the General Assembly's purpose and intent when it enacted the statute. *Hollingsworth v. Severstal Sparrows Point, LLC*, 448 Md. 648, 655 (2016). "We assume that the General Assembly's intent is 'expressed in the statutory language' and therefore begin our analysis with the plain language of the statute." *Spevak*, 480 Md. at 571–72 (quoting *Moore v. RealPage Util. Mgmt., Inc.*, 476 Md. 501, 510 (2021)). We begin this task by looking to the normal, plain meaning of the text, "ensur[ing] that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Id.* at 572 (quoting *Moore*, 476 Md. at 510).

And while we focus on the statute's plain text, we avoid reading "statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *Lockshin v. Semsker*, 412 Md. 257, 275 (2010). Instead, we analyze the statutory scheme as a whole, considering the "purpose, aim or policy of the

18

[General Assembly] reflected in that statute." *McClanahan v. Wash. Cnty. Dep't of Soc. Servs.*, 445 Md. 691, 701 (2015) (quoting *Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 463 (1991)). The Court "avoid[s] constructions that are illogical, unreasonable, or inconsistent with common sense." *Spevak*, 480 Md. at 572. If we are satisfied that the statute's plain language is unambiguous and clearly communicates the General Assembly's intent, then our inquiry ends, "and we apply the plain meaning of the statute." *Hollingsworth*, 448 Md. at 655 (quoting *McClanahan*, 445 Md. at 701).

The plain language of various provisions of the Act confirms that, at least in this context, the words "benefits" and "compensation" are interchangeable, such that an attorney is paid if—and only if—there is any award leftover *after* L&E § 9-610's offset is applied. Because our focus concerns how attorneys are compensated for their work before the Commission, we start with L&E § 9-731. This section states that "[w]hen the Commission approves a fee, the fee is a *lien on the compensation awarded*." L&E § 9-731(a)(2) (emphasis added). The General Assembly has defined "compensation" to mean "money payable under this title to a covered employee[.]" *Id.* § 9-101(e)(1). Plainly then, an attorney's fee is a lien on the money that "may, can, or *must* be paid[,]" to the injured employee. *Payable*, Merriam-Webster's Collegiate Dictionary (11th ed. 2020) (emphasis added).[21] Therefore, because an attorney's fee is a lien on compensation owed, and because compensation is money owed to an employee, the General Assembly intended for the

---

[21] Citing a dissenting opinion in *Holy Cross Hospital, Inc. v. Maryland Employment Security Administration*, 288 Md. 685, 702 (1980) (Davidson, J., dissenting), Petitioners themselves acknowledge that "benefits means money payable to an individual[.]"

injured worker to be the *sole party* responsible for compensating their counsel from a specifically identified source of funds.

Turning now to the main provision at issue, L&E § 9-610, we agree with Petitioners that the General Assembly did not define the term "benefits[,]" *id.* § 9-610(a)(1), but that by no means advances Petitioners' argument. "Benefit" or "benefits" is used multiple times throughout L&E § 9-610(a)(1). In some instances, it refers to ADR benefits awarded by an employer, and other times it refers to WCA benefits. We are concerned with the latter, which is mentioned twice: (1) "for payment of similar benefits under this title" and (2) "the payment for benefits under this title[.]" *Id.* In both instances, "benefits" is clarified by the word "payment." Naturally, then, the WCA benefits to which L&E § 9-610(a)(1) is referring are *monetary* benefits, which precisely is how we think of "compensation" in this context: a monetary benefit awarded to a claimant. Thus, "benefits," as used in L&E § 9-610(a)(1), although not defined, means the same thing as compensation in L&E § 9-731(a)(2).[22]

---

[22] At first blush, there is a logical appeal to Petitioners' view that the term "benefits" is different than "compensation," with the former encompassing other possible entitlements under the Act, such as medical treatment. But, setting aside the five-year window for modification of a prior award from the Commission, *see* L&E § 9-736(b)(3), that view does not account for the fact that attorneys who secure medical treatment for their clients cannot be compensated for securing medical treatment under L&E § 9-660 because medical treatment does not fit the definition of "compensation," *see id.* § 9-101(e). As a result, it is not the type of award for which an attorney can be compensated for securing. *See id.* § 9-731(a)(ii). Thus, Petitioners' argument that employers can jeopardize an employee's right to future counsel by granting ADR benefits and diminishing an attorney's fee is unavailing.

Petitioners' assertion to the contrary creates incongruity with at least two other provisions: L&E §§ 9-101(e)(1) and 9-731(a)(2). For example, in cases where an offset under L&E § 9-610 is appropriate, the first-level calculation by the Commission (the monetary figure before applying the offset) is not the injured employee's compensation because that amount of money is not payable to the injured worker. The injured worker is entitled only to the *post-offset value* of the Commission's first-level calculation. Therefore, awarding an attorney a fee based on that first-level calculation (the monetary figure before applying the offset) would be to award a fee based on a figure that does not meet the legal definition of "compensation" in L&E § 9-101(e)(1). And, as just noted, an attorney's fee in these matters is a lien against "compensation awarded." *Id.* § 9-731(a)(2). We, thus, decline to adopt an interpretation of the offset provision that would contradict other provisions of the Act. *See Lockshin*, 412 Md. at 275–76.

Petitioners' interpretation also presents myriad problems. Under Petitioners' theory, L&E § 9-610's purpose was to prevent "duplicative checks made payable to the same claimant, leaving the portions of compensation awards that are not payable to the [c]laimant un-offset." First, there is no portion of a compensation award that *is not payable* to an injured worker. As just discussed, "compensation" is defined to include *only* that to which an injured employee is entitled. So, the idea that a single award of compensation encompasses a value payable and a value not payable to an injured worker squarely contradicts the plain language of the defined term "compensation." *See* L&E § 9-101(e)(1).

Second, nowhere in the Act is the Commission authorized to make a separate award for attorney's fees. Attorneys are granted a statutory lien against the single award of

21

compensation. The Commission does not have the authority to make an award of compensation/benefits to the injured worker and then enter a separate award of attorney's fees.[23]

Third, even if, as Petitioners contend, the Commission did have the authority to enter multiple awards, Petitioners do not address the elephant in the room: From where are those funds pulled? The plain language of L&E § 9-610(a)(2) tells us that claimants are solely responsible for their attorney's fees. So, if the Commission were to calculate an attorney's fees before applying the offset provision, then an injured worker's award would be *significantly* reduced—if not entirely so—by the attorney's fees. Take Mr. Zukowski's

---

[23] And, as the County notes, the General Assembly knows how to impose additional liability upon an employer separate and apart from an underlying award of compensation. In particular, an employer's obligation to pay a 6.5% "assessment" to the SIF in various instances is a clear indication that the General Assembly knows how to make an employer *exclusively* liable to make a payment *completely separate* from the Commission's compensation award. *See* L&E § 9-806(a)(1)(i). That the General Assembly chose to keep claimants liable for their attorney's fees and directly tied it to "compensation awarded" is, therefore, telling.

Nor does our holding in *IWIF* assist Petitioners. There, this Court held that, under L&E § 9-806(a)(1)(i), an employer's obligation to pay a SIF assessment based on permanent disability or death is calculated "*prior to* the deduction of the statutory offsets pursuant to L[&]E §§ 9-503 and 9-610[.]" 447 Md. at 229 (emphasis added). We held as such because the SIF assessment specifically was tied to, among other things, the Commission's "award . . . for *permanent disability*[,]" L&E § 9-806(a)(1)(i) (emphasis added), and because such disability does not change—even if an employer is entitled to a statutory offset, *IWIF*, 447 Md. at 227. We confirmed that interpretation by contrasting it to the language found in L&E § 9-806(a)(1)(ii), which applies to an "*amount payable* . . . under a settlement agreement approved by the Commission[,]" (emphasis added), noting that that difference in language evinced the General Assembly's intent for the SIF assessment based on an award of permanent disability to be applied before the statutory offset is calculated, *IWIF*, 447 Md. at 228. We also noted that such an interpretation furthered the General Assembly's intent of ensuring the solvency of the SIF. *IWIF*, 447 Md. at 228–29.

22

case as an example. Before the offset, Counsel would have been entitled to a fee of $10,858.75. But Mr. Zukowski was entitled to post-offset compensation of approximately $11,680. Because the claimant is solely responsible for an attorney's fees, Petitioners' interpretation would have left Mr. Zukowski with roughly $820 in compensation after paying Counsel. The General Assembly surely did not intend for the attorneys of injured workers to profit more than their own clients.[24]

Thus, Petitioners' interpretation is rife with problems that conflict with other provisions of the Act and produce untenable results. We find support for our plain language analysis in the cases relied upon by the Appellate Court below: *Feissner* and *Brunson*.

In *Feissner*, this Court addressed whether an attorney for a claimant in a workers' compensation case could collect attorney's fees from the claimant's public employer even though ADR benefits had offset the entire compensation award. 282 Md. at 414. In *Feissner*, like this case, the attorney represented two claimants in unrelated workers' compensation proceedings. *Id.* at 415. In both cases, the Commission issued total permanent disability findings and ordered payment of compensation, as well as attorney's fees. *Id.* The employer invoked the Act's offset provision, arguing that it was liable for neither the awarded compensation nor the attorney's fees because the claimants' ADR

---

[24] These problems are compounded when an attorney's fee is *larger* than the claimant's award, such as in Mr. Ruggiero's case. Mr. Ruggiero was awarded almost $31,000, but Counsel's fee based on the Commission's first-level calculation (the monetary figure not accounting for the statutory offset) would have been roughly $52,000. What happens then? Could Counsel dip into Mr. Ruggiero's ADR benefits until the lien is satisfied? Could Counsel obtain a civil judgment upon which to collect? These problems leave injured workers in a worse position and counsel us away from Petitioners' interpretation.

23

benefits were at least equal to the benefits to which the claimants were entitled under the Act. *Id.* at 415–16. The Commission agreed with the employer that the ADR benefits offset the compensation award in each case but that the attorney's right to collect fees was abrogated by the total offset of the compensation award in only one of the cases. *Id.* at 416. The employer refused to pay. *Id.*

On appeal, this Court held that L&E § 9-610 operated to discharge in full the employer's liability to the claimants under the Act, resulting in "no fund on which the attorney's lien authorized by [L&E § 9-610] c[ould] attach or from which payment of legal fees c[ould] be compelled." *Id.* at 421. We started with the recognition that L&E § 9-731 "does not treat attorney's fees as an 'add-on' or 'double' benefit which the employer must pay injured employees *in addition to* the compensation award itself." *Id.* at 418 (emphasis added). The Act, we stated, does not require "two *separate* awards payable by the employer and its insurer, one to the attorney, and another to the employee." *Id.* (quoting *Chanticleer Skyline Room, Inc. v. Greer*, 271 Md. 693, 700 (1974)). Rather, there is but one—and only one—award of compensation made. *Id.* We stated in no unclear terms that, under the Act, "the payment of legal fees does not become an independent obligation of the employer or [its] insurer, *but instead remains at all times the personal responsibility of the claimant*." *Id.* (emphasis added). Thus, while a lien does not come into existence until the Commission approves the request for the fee, "the money to be paid the attorney

24

remains part of the fund to which the employee is entitled as compensation."[25]  *Id.* at 419.

At all times, the responsibility of payment rests with the claimant.  *Id.*  Thus, we held:

> While the Commission, pursuant to the dictates of [L&E § 9-610], must initially make a determination as to the amount and nature of work[ers'] compensation benefits to which a claimant would be entitled in the absence of [ADR benefits], this evaluation does not in and of itself constitute an award of compensation within the contemplation of [L&E § 9-731] and out of which a lien for counsel fees could be satisfied.

*Id.* at 421.

Feissner, thus, confirms our plain-language interpretation above, which concludes

that L&E § 9-610's offset is applied before an award of attorney's fees can be made.  Like

Petitioners here, the attorney-petitioner in *Feissner* argued that the employer was liable to

pay the attorney's fees regardless of whether the underlying award was offset.  *Id.* at 416–

17.  We explain again, as we did in *Feissner*, that the term "benefits" in L&E § 9-610

means compensation benefits awarded by the Commission and that superior ADR benefits

issued by an employer offset the compensation awarded.  *Id.* at 421.  We reiterate today

what we previously explained in *Feissner*: There is a single award of compensation that is

payable to an injured worker, and because "compensation" is defined to include only that

to which an injured employee is entitled, there is no money—where L&E § 9-610

---

[25] While we noted that an employer *could* fulfill its obligation to the employee by transmitting the amount of the attorney's fee directly to the attorney, such action would "merely alter[] the manner in which the employer discharges [their] liability for the compensation award[]" because "[l]iability for payment of counsel fees continues to rest with the employee."  *Feissner*, 282 Md. at 419.  That choice simply would cut out the middleman, so to speak, of funds passing from the employer to the employee and subsequently from the employee to the attorney.

25

completely offsets an award—to which an attorney's lien under L&E § 9-731 can attach or from which payment of attorney's fees can be satisfied.[26]  *Id.*

In *Brunson*, the Appellate Court relied on our opinion in *Feissner* to address whether counsel had the right to attorney's fees when: "(1) an initial award for temporary total disability [was] rescinded; and (2) a subsequent award for permanent partial disability [did

---

[26] Petitioners argue that *Feissner* did not address the precise question here and go a step further by asking us to overrule *Feissner* because it "rests on a flawed reading of the legislatively intended scope of [L&E §] 9-610 offsets[.]"  We agree that, in *Feissner*, the attorney filed separate civil actions seeking payment from the employer instead of seeking his fee through the Commission, 282 Md. at 416, but that fact was not dispositive of our analysis in *Feissner*, and it does not compel a different result here.  In asking us to overrule one of our precedents, Petitioners' bare assertions come nowhere close to "overcoming the difficult hurdle of *stare decisis*[.]"  *Mitchell v. State*, 488 Md. 1, 35 (2024) (Eaves, J., concurring in part and dissenting in part).  We will overrule one of our prior decisions in only two narrow circumstances: "[W]hen the decision is 'clearly wrong and contrary to established principles' or where there is 'a showing that the precedent has been superseded by significant change in the law or facts."  *Bennett v. Gentile*, 487 Md. 604, 621 (2024) (quoting *Wadsworth v. Sharma*, 479 Md. 606, 630 (2022)).  At oral argument, appellate counsel stated that, if *Feissner* were argued today, he believes that *Feissner* would have come out differently.  That view fails to appreciate, however, that *stare decisis* seeks to curb such judicial hubris.  *See Brown v. Davenport*, 596 U.S. 118, 141 (2022) (noting that *stare decisis* is "a tool of judicial humility" and seeks to avoid "judicial hubris").  We decline to overrule *Feissner* and, instead, reaffirm its holding.

Petitioners also posit that the Court in *Feissner* "seemed to confuse payment of a counsel fee out of compensation awarded with payment of a contingency fee from a personal injury settlement/verdict."  They argue that it would have been more appropriate for the Court in *Feissner* to describe the attorney's interest as "an enforceable security interest, in the event that [the attorney's] client comes into possession of the portion of a compensation award that was statutorily intended to pay the attorney."  Since *Feissner*, however, the Act specifically used—and continues to use—the phrase, "*lien* on the compensation awarded."  L&E § 9-731(a)(2) (emphasis added).  That explains why the Court in *Feissner* called it a lien and not an enforceable security interest.  In any event, as we just noted, *see supra* n.26, we held in *Feissner* that the employee remains liable to the attorney for any fee awarded and that it matters not whether the payment comes from the employee or the employer in the course of the employer's obligation to "discharge [its] liability for the compensation awarded."  282 Md. at 419.

not result in] compensation to the claimant because the award [was] offset by a credit for payment of the invalidated initial [temporary total disability] award." 221 Md. App. at 585. There, the Commission ordered two compensation awards to the claimant for an approximate total of $30,500. *Id.* at 586–87. From the two compensation awards, the attorney was entitled to approximately $1,600. *Id.* at 587. While the employer's petition for judicial review in the circuit court was pending, it paid the $30,500 ordered by the Commission, but, at the conclusion of a jury trial,[27] the circuit court ordered that the Commission's awards "be rescinded and annulled," and remanded the case to the Commission to enter an order consistent with the jury's verdict. *Id.*

After a new hearing on remand, the Commission ordered a permanent partial disability compensation award of $7,100 and granted the employer credit for its original payment made pursuant to the now-annulled awards for temporary total disability, which offset the employer's obligation entirely. *Id.* at 588–89. The Commission denied the attorney's fee request. *Id.* at 589.

On appeal, with respect to the first award for temporary total disability, the Appellate Court, relying on *Feissner*, held that because the initial award "was rescinded

---

[27] A person/entity aggrieved by a Commission decision may "appeal" from an adverse Commission decision, by, among other things, "filing a *petition for judicial review* in accordance with Title 7 of the Maryland Rules[.]" L&E § 9-737(1) (emphasis added). While § 9-737 speaks both in terms of an appeal and judicial review, L&E § 9-745(d) allows any party upon motion, unlike in traditional actions for judicial review of an agency's decision, to request that any question of fact be submitted to a jury, and the circuit court is required to submit that question to a jury. If the circuit court "determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings." *Id.* § 9-745(e)(2).

and annulled, there was no final award of compensation in that regard. Accordingly, there was no award on which the attorney's lien could attach." *Id.* at 597. *Brunson*, like *Feissner*, asked to what funds do an attorney's fees attach? *Id.* at 585, 601. The Appellate Court's rationale for *Brunson*'s first question, that because the awards for temporary total disability were annulled, there was no actual "amount due" to the claimant under those original orders and, thus, no funds to which the attorney's lien could attach, supports our interpretation of L&E § 9-610 in this case. *See id.* at 595–98.[28]

---

[28] Regarding the second question in *Brunson*, whether the attorney was entitled to a fee based on the new award for permanent partial disability, the Appellate Court explained that

> there was no actual amount due to Ms. Brunson, given the offset for the overpayment made pursuant to the initial award of temporary total disability. Accordingly, similar to *Feissner*, where there was no actual amount due, given an offset due to another payment, there was no fund to which the attorney's fee could attach. Accordingly, the Commission properly declined to award attorney's fees for permanent partial disability.

*Id.* at 601. Thus, the Appellate Court reached a similar holding, again relying on *Feissner*, for the second question. We denied certiorari review in *Brunson* on the grounds that the petition was untimely. *See Brunson v. Univ. of Md. Med. Sys. Corp.*, COA-PET-0120-2015 (July 27, 2015) ("[T]he petition [is] . . . dismissed on the grounds of lateness."); *see also* 443 Md. 735 (2015). *Feissner*'s and *Brunson*'s first question have a key element in common: Either because of an award of ADR benefits or because an initial Commission award was later annulled, *no money under the Act was payable to the claimant. See Feissner*, 282 Md. at 418–19; *Brunson*, 221 Md. App. at 597.

*Brunson*'s second question presents quite a different scenario: Whether money—*paid under the Act pursuant to a later-annulled Commission order*—used to completely offset a future Commission award extinguishes an attorney's lien under the *latter award*. Because we are not presented with that discrete set of facts in this case, we express no opinion as to the Appellate Court's rationale or holding with respect to the second question presented in *Brunson*.

Petitioners take issue with *Brunson* because it did not involve a statutory offset under L&E § 9-610, which, in their view, renders it inapposite. For the reasons just discussed, we disagree. *Brunson*'s first issue involved an analogous issue to the present case: What happens to an attorney's statutory lien under L&E § 9-731 when, for one reason

28

### B.    *L&E § 9-610 is Constitutional*

Lastly, Petitioners argue that it is unconstitutional for this Court to interpret the statute in a way that would deprive attorneys of their property, i.e., their time. Specifically, Petitioners argue that "it is unconstitutional to take away [Counsel]'s time" by canceling her attorney's fees "without due process of law." Our interpretation of the various provisions we have discussed, however, does not offend the Constitution of the United States or of this State.[29] *See Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 194 (2022) ("This Court generally construes statutory language in a way that avoids violating the Constitution.").

"Article 24 of the [Maryland] Declaration of Rights and the Fifth and Fourteenth Amendments of the United States Constitution assure Maryland citizens of their rights to both procedural due process and substantive due process." *Johnson v. Md. Dep't of Health*, 470 Md. 648, 686 (2020); *see also In re Ryan W.*, 434 Md. 577, 608–09 (2013) ("The Fourteenth Amendment of the U.S. Constitution, as well as Article 24 of the Maryland Declaration of Rights (usually read *in pari materia* with the federal analogue), prohibits the deprivation of life, liberty, or property without due process of law."). The former "ensures that individuals are not subject to arbitrary governmental deprivation of their

---

or another, there is no longer any award owed under the Act? Whether the award is completely offset under L&E § 9-610 or annulled by a circuit court under L&E § § 9-745(e)(2), the result is the same: There is no award to which a lien for an attorney's fee can attach.

[29] Petitioners do not specify whether this constitutional claim is brought under the Constitution of the United States, or under our Maryland Constitution. Our analysis applies to both.

liberty and property interests by requiring that litigants 'receive notice[] and an opportunity to be heard.'" *Johnson*, 470 Md. at 686 (quoting *Pickett v. Sears, Roebuck & Co.*, 365 Md. 67, 81 (2001)). Determining when procedural due process has been satisfied requires a "flexible" approach, and the procedural safeguards must be commensurate with what the "particular situation demands." *Id.* (quoting *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976)).

An attorney makes a voluntary decision about whether to represent a client. There are different methods of compensation that attorneys use, such as an hourly rate, a contingency fee from a settlement, or, as here, a specified percentage from an award of compensation. In any sort of contingency arrangement, the attorney takes a risk by representing a client who might not recover anything after a lawsuit. This is standard practice in the legal field, and the law does not deem the practice unconstitutional.[30] By signing a retainer agreement with Petitioners, Counsel agreed to accept a specified percentage of any amount Petitioners might be awarded from the Commission. Counsel was generally aware of how attorney's fees were calculated and obtained under COMAR 14.09.04.03 and L&E § 9-731 at the time she took Petitioners' cases. That Counsel ultimately misinterpreted how L&E §§ 9-610 and 9-731 interact with each other does not render unconstitutional the State's scheme for awarding attorney's fees under the Act when ADR benefits are involved.

---

[30] In certain circumstances, however, contingency fee arrangements have been deemed unethical. *See* Md. Rule 19-301.5(d)(1)–(2) (prohibiting contingency fee arrangements in criminal and family law matters).

Nor is the County's decision to unilaterally award claimants ADR benefits constitutionally problematic. Indeed, we expressed similar sentiments in *Feissner*. There, citing cases from Kentucky and New Jersey, the attorney-petitioner argued that "legal fees 'should be based on the facts [existing] as of the time the services were rendered, *and should not be at the mercy of subsequent or collateral events over which [the attorney] has no control.*'" *Feissner*, 282 Md. at 419 (first alteration in original) (emphasis added) (quoting 3 A. Larson, Law of Workmen's Compensation § 83.13 (1976)). We went on to note that the cases on which the attorney relied were "predicated upon the operation of a statute which either expressly or impliedly preserved the right to counsel fees even when the compensation award was subsequently nullified." *Id.* at 420. Maryland does not have any comparable law and requires attorneys to be paid out of a claimant's award of compensation. *Id.* at 420–21. Ultimately, a disagreement with the uniform interpretation of a statute by the Commission, the circuit court, the Appellate Court, and now this Court provides no grounds to allege a violation of procedural due process under the Constitution of either Maryland or the United States.

## V
## CONCLUSION

We hold, consistent with our longstanding principles of statutory construction, that there is no distinction between the term "benefits" under L&E § 9-610 and the term "compensation" in L&E § 9-731. The Commission properly applied L&E § 9-610(a)(1)'s offset before determining Counsel's fees in Petitioners' cases. This holding is consistent with our precedent in *Feissner*, which we do not disturb. Thus, any change to Maryland's

31

scheme regarding how to apply the offset provision to attorney's fees under the Act must come from the General Assembly: the coordinate branch of government whose prerogative it is to make and change the law. Our role simply is to interpret the statute as written. Accordingly, we affirm the Commission's interpretation and application of L&E § 9-610.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**